Submitted on briefs February 15, reversed and decree entered March 8, 1921.

## FENDALL v. MILLER.

(196 Pac. 381.)

**Easements—Fee Owner has Right of Use Consistent With Easement.**

1. The rights of the owner of an easement in the land of another are measured by the purpose and character of that easement, and, so far as is consistent therewith, the right to use the land remains in the owner of the fee.

**Easements—Extent to be Determined from Grant or Reservation Under Circumstances.**

2. The extent of an easement should be determined by construction of the grant or reservation by which it is created, aided by circumstances showing the intention of the parties.

**Easements—Without Specific Definition Use is Limited to Purpose.**

3. If the grant of an easement is specific in its terms, it is decisive of the limits of the easement; but, if such limits are not specifically defined therein, the easement is only such as is reasonably necessary and convenient for the purpose for which it was created.

**Easements—Burden on Servient Estate not Increased After Grant.**

4. The servient estate will not be burdened to a greater extent than was intended at the time of the creation of the easement.

**Easements—Right of Servient Owner to Maintain Gates Depends on Terms and Circumstances.**

5. The grant of an easement for a way without reservation of right to maintain gates does not necessarily preclude the maintenance of such gates, but the question whether the grantee is entitled to an unobstructed way depends on the terms of the grant, its purposes, nature and situation of the property, and the manner in which the way has been used.

**Easements—Servient Owner cannot Materially Interfere With Easement.**

6. The owner of the servient estate cannot make any alterations in his property by which the enjoyment of the easement will be materially interfered with.

**Easements—Words in Grant Given Ordinary Meaning.**

7. When there is no ambiguity, the words in the grant of an easement should receive their plain ordinary meaning, unless it appears by the context that they were used in a different sense or unless, when applied to the subject matter, they have a technical meaning.

**Contracts — Express Exception or Reservation Raises Presumption Against Others.**

8. Where there is an exception or reservation of one thing, it is presumed that no other exceptions or reservations are intended.

**Contracts—All Words are to be Given Effect.**

9. Every word or clause in a written instrument should be given its sufficient effect, if possible to do so.

**Easements—Grant of Gateway to be Used as "Road of Public Easement" Authorizes Only Existing Gates.**

10. Where an owner of land conveyed to a grantee from him, who was entitled to a way of necessity, for an additional valuable consideration, a gateway across his land to be used as a road of public easement, the words "gateway" and "road of public easement" were apparently used with a view to Section 4610, Or. L., permitting either a public road or a gateway which was referred to

---

3. On extent of indefinite easement as affected by the extent to which it has been used, see note in 5 L. R. A. (N. S.) 851.

5. On the question of right to maintain gates or bars across right of way, see notes in Ann. Cas. 1914D, 770; 48 L. R. A. (N. S.) 87.

6. On the question of duration of easements appurtenant, see note in 20 L. R. A. 631.

in the title as a road of public easement, and the expression "road of public easement" means a road which not only the grantee but also the public in general has a right to use, so that the grantor's successors could not burden the easement with gates in addition to those existing across it at the time of the grant, especially where the grantor protected his rights by other express reservations.

**Easements—Way of Necessity Implied from Grant of Inaccessible Part of Land.**

11. Where a tract of land is conveyed to which there is no means of access except over the remaining land of the grantor, a way of necessity over the grantor's land is implied by law which is fixed in the grantee as an appurtenance to the estate granted and which cannot be divested by a subsequent conveyance of the remaining land by the grantor.

From Yamhill: GEORGE G. BINGHAM, Judge.

In Banc.

Plaintiff brings this suit to enjoin defendants from interfering with a certain gate across a right of way. Defendants, by their answer, asked that the plaintiff be restrained from constructing the gate. A decree was rendered in favor of plaintiff, from which defendants appeal.

On October 8, 1904, P. R. Fendall was the owner of a tract of land consisting of 518.20 acres, situated near Willamina, in Yamhill County, Oregon, when he conveyed to Herman Miller and Katie D. Miller, defendants herein, 100 acres from the north side of this tract. At the time of the conveyance, the tract purchased by the defendants was reached from the county road by means of a private way located across the remainder of the tract of P. R. Fendall. The defendants continued to use the private way for a period of about two years when, on September 18, 1906, for a valuable consideration, the defendants purchased from P. R. Fendall an easement in and to the private way across the property of P. R. Fendall. A deed was made on that date by P. R. Fendall to Katie D. Miller, and after reciting the consideration

and other formal matters, the easement conveyed was described as follows:

" * * a gateway to be used as a road of public easement over and through a certain strip of land now owned by us and being a part of the Donation Land Claim of Charles E. Fendall and wife; more particularly described as beginning at a point near the southeast corner of the place formerly owned by W. E. Fendall, where a private road is now located in Section 25, T. 5 S., R. 7 W. of the Willamette Meridian; thence down the Willamette River on the west side thereof where a private road is now located and used, to the county road on the south side of the said P. R. Fendall's farm.

"This conveyance is made and accepted with the distinct understanding that the thing sold is a privilege, an easement, the grantors reserving unto themselves the fee in the land over which the road passes."

At the time, and for about two years before, the defendants purchased this right of way, there were two gates maintained at the termini of the same, one located where the right of way enters the county road and the other at the point where the right of way opens into the property of the defendants. Some time thereafter, P. R. Fendall sold another parcel of the tract to Homer Holman, who fenced and placed a gate on his property across this particular right of way. The defendants objected to this gate being placed across the right of way, but it seems that the gate is still there. On November 14, 1913, the plaintiff, who is the son of P. R. Fendall, purchased a tract of 113.40 acres which lies immediately south and parallel to the lands of the defendants. On August 19, 1916, one Etta Patriquen acquired title to the remainder of the Fendall lands on the south of plaintiff's tract, amounting to 304.78 acres. At the time that the plaintiff and Etta Patriquen ac-

quired their deeds, the deed of right of way described above was of record, and all purchasers took their title with full knowledge of the defendants' right of way. The Willamina River flows through the Fendall tract near the easterly line and nearly paralleling said line, forming the eastern boundary of defendants' lands. In the year 1917, the plaintiff, for the purpose of separating his lands from those of Etta Patriquen, constructed a division fence, running the full distance between the lands of the plaintiff and the Patriquen land, placing a gate across the right of way and extending the fence down to the Willamina River. It is this particular gate which is the subject of controversy in this suit. The defendants commanded the plaintiff not to erect the gate, as it was an unreasonable interference with their right of way and contrary to the express terms of the written deed of easement described above, and when the plaintiff disregarded the defendants' warning, they caused the gate to be taken off of its hinges and set by the side of the road in a peaceable manner. When the plaintiff replaced the gate this was repeated.

It is the contention of the defendants that the placing of this particular gate across the right of way is absolutely forbidden by the plain terms of the deed of easement; that the right of way is a public easement; and that the plaintiff has no right to obstruct in any manner the free passage of the defendants and public generally over the right of way. They claim that the only gates permitted upon the easement are the two gates which were on the easement at the time of the grant; that in any event the plaintiff is making an unreasonable use of the right of way by placing this particular gate thereon; that they purchased a right of way of plaintiff's

predecessor in title, paying a valuable consideration therefor, and that having done so they have property rights in the easement which plaintiff must respect, having purchased subject to those rights.

On the other hand, the plaintiff claims that the gate in question at the point where it is located is a necessary and reasonable convenience to him in the occupation and enjoyment of his land.

REVERSED.    DECREE ENTERED.

For appellants there was a brief submitted over the name of *Messrs. Talmage, Claussen & Mannix.*

For respondent there was a brief prepared and presented by *Mr. Oscar Hayter.*

BEAN, J.—1. The rights of a person owning an easement in the land of another are measured and described by the purpose and character of that easement; and so far as is consistent therewith, the right to use the land remains in the owner of the fee: 9 R. C. L., p. 784, § 42.

2–4. The extent of an easement is to be determined by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstances which have a legitimate tendency to show the intention of the parties. If the grant is specific in its terms, it is decisive of the limits of the easement. On the other hand, where the easement is not specifically defined, the rule is that it need be only such as is reasonably necessary and convenient for the purpose for which it was created. The servient estate will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement: 9 R. C. L. 785, § 43; 19 C. J., p. 967, § 202; *Winslow* v. *Vallejo,* 148 Cal.

723 (84 Pac. 191, 113 Am. St. Rep. 349, 7 Ann. Cas. 851, 5 L. R. A. (N. S.) 851); *Lidgerding* v. *Zignego,* 77 Minn. 421 (80 N. W. 360, 77 Am. St. Rep. 677); *Smith* v. *Furbish,* 68 N. H. 123 (44 Atl. 396, 47 L. R. A. 226); notes, 101 Am. St. Rep. 902; 20 L. R. A. 635.

5. It is stated in 9 R. C. L., page 800, section 56, that:

"The grant of a way without reservation of the right to maintain gates does not necessarily preclude the owner of the land from doing so, and unless it is expressly stipulated that the way shall be an open one, or it appears from the terms of the grant or the circumstances that such was the intention, the owner of the servient estate may erect gates across the way, if they are constructed so as not unreasonably to interfere with the right of passage."

See note to *Luster* v. *Garner,* 48 L. R. A. (N. S.) 90.

The question whether the grantee of a right of way is entitled to a way unobstructed by gates depends upon the terms of the grant, its purposes, nature, and situation of the property and the manner in which the way has been used and occupied: 19 C. J., p. 986, § 240.

6. The owner of the servient estate, while he may use his property in any manner consistent with the existence of the easement, has no right to make any alterations in his property by which the enjoyment of the easement will be materially interfered with: 19 C. J., p. 983, § 234.

7. With this brief reference to the law we come to the delicate problem of construing the grant of the easement in question. The decisions upon the question of burdening an easement with gates are as various as the kinds of easements are numerous. When there is no ambiguity the words used in the

grant of an easement should receive their plain ordinary meaning, unless it appears by the context that they were used in a different sense, or else when applied to the subject matter they have a technical meaning: *Flaherty* v. *Fleming,* 58 W. Va. 669 (52 S. E. 857, 3 L. R. A. (N. S.) 461, 463); *Patton* v. *W. Carolina Co.,* 101 N. C. 408 (8 S. E. 140); *Garland* v. *Furber,* 47 N. H. 301.

8, 9. It is a well-settled rule of law that, where there is an exception or reservation of one thing, it will be presumed that no other exceptions or reservations are intended than those expressed. Every word or clause in a written instrument is to be given its full effect if possible to do so: *Town of Gold Bar* v. *Gold Bar Lbr. Co.,* 109 Wash. 391 (186 Pac. 896).

10. It may be assumed that, if the conveyance of the easement in question was "of a gateway now owned by us" or a private way, that the owner of the servient estate, Richard Fendall, would have the right to construct gates in addition to those existing at the time of the grant. We have, however, other words to construe. The gateway is "to be used as a road of public easement." As noted, the conveyance of the easement was executed on September 18, 1906. At that time and for a long time prior thereto the act of 1903, Section 4610, Or. L., which was a re-enactment of the substance of the Law of 1876, p. 251, was on our statute books. Various amendments to the original act have been made from time to time. These are not necessary to be considered. The statute provides that when a farm or residence of a person is not reached conveniently by any public road, by compliance with the statute, there may be laid out and opened "either a suitable public road not exceeding sixty (60) feet wide, or a gateway not less than ten

(10) nor more than thirty (30) feet wide, or both, as may be found best by said road viewers.'' Before 1903, the statute provided for the location of a ''county road thirty feet in width or a gateway not less than ten nor more than thirty feet in width from the residence of such person to some other public road. * * '' The title of the act of 1903 referred to such highway as ''roads of public easement.'' In Bellinger & Cotton's Code, which was in use at the time of the grant, in a note to Section 4966, we find that—

''The general law in regard to laying out public highways does not apply to the law of which this is a part, to *roads of public easement* * * ''—citing *Towns* v. *Klamath Co.,* 33 Or. 225 (53 Pac. 604); *Sullivan* v. *Kline,* 33 Or. 260 (54 Pac. 154); *Fanning* v. *Gilliand,* 37 Or. 369 (61 Pac. 636, 62 Pac. 209, 82 Am. St. Rep. 758).

In each of the three cases just cited the road is referred to as a ''road of public easement.'' In *Towns* v. *Klamath Co.,* 33 Or. 225 (53 Pac. 604), speaking of the kind of road, it is declared to be an ''open public way.'' In *Anderson* v. *Smith-Powers Logging Co.,* 71 Or. 276, at page 297 (139 Pac. 736, L. R. A. 1916B, 1089), ''road of public easement'' is referred to. The constitutionality of the act had been questioned.

It is believed that the conveyance in question was executed with a view to the statute referred to. It seems the defendants, desiring not to be required to file a petition and pay the damages which might be assessed for the laying out and opening a county road, or road of public easement, obtained from the plaintiff's grantor a conveyance of an easement, which they evidently expected would answer the same

purpose or a gateway to be used for the same pur-
pose. It was termed a "gateway" for the reason
there were two gates originally constructed at the
termini thereof. The words "to be used as a road
of public easement" indicate that it was to be a
public thoroughfare. In other words, the easement
in question partakes of the nature of both of the
kinds of highway provided for by the statute. If
the highway between the two gates then existing is
termed a "county road," or "road of public ease-
ment," according to the statutes of 1903 and 1876,
or a "public road" as designated by Section 4610,
Or. L., it would be incompatible with the grant to
burden such road with four gates.

The words contained in the description of the ease-
ment "to be used as a road of public easement"
qualify the meaning of the term "gateway" and
demonstrate the exact nature of the easement which
the defendant purchased. It is only where there is
an uncertainty or ambiguity that the court will go
outside of the deed to inquire into the nature of the
easement: 13 Cyc. 610; *Dickinson* v. *Whiting,* 141
Mass. 414 (6 N. E. 92); *Dean* v. *Erskine,* 18 N. H. 81;
*Reed* v. *Locks & Canals,* 49 U. S. (8 How.) 274 (12
L. Ed. 1077, see, also, Rose's U. S. Notes); *Snow* v.
*Orleans,* 126 Mass. 453, 456.

11. Where there is a conveyance of a tract of land
and there is no means of access thereto or egress
therefrom except over the remaining land of the
grantor, a way of necessity over such land is granted
by implication of law, and the grantor cannot by
subsequent conveyance deprive the grantee of a way.
Such right is vested in the grantee as an appurte-
nance to the estate granted: 19 C. J. 923, 924; *Brown*
v. *Kemp,* 46 Or. 517 (81 Pac. 236).

The defendants were not satisfied with the character of the right of way which they had by virtue of law. They were desirous of obtaining a right of way over the property of P. R. Fendall which would guarantee to them more rights than they had before their purchase. They evidently wanted an open public right of way, subject only to the two gates which were upon the right of way on the date of the conveyance. They paid a valuable consideration for the easement purchased, and to encumber the same with numerous gates would be in direct conflict with the deed of conveyance. "A road of public easement" means a road which not only the defendants have a right to use but also the public in general: 19 C. J. 983, 987, and notes; *De Vore* v. *Ellis,* 62 Iowa, 505 (17 N. W. 740); *Welch* v. *Wilcox,* 101 Mass. 162 (100 Am. Dec. 113); *Goodale* v. *Goodale,* 107 Me. 301 (78 Atl. 567); *Ledford* v. *Cummins,* 20 Ky. Law Rep. 393.

The term "gateway," if it had been used alone in the deed, would mean a road or passageway upon which gates are ordinarily placed. The Fendalls, as grantors in the deed of easement in question, defined the nature of the particular gateway to be of such a character and nature that it was to be used as a road of public easement. The grantor was very careful in describing just what he sold. To protect himself he made a certain reservation in the deed. He and his successors in title are now precluded from saying that he reserved other things not expressly reserved in the deed. In the instant case there are now four gates upon the right of way, which is about three fourths of a mile in length, the plaintiff having placed the fourth gate thereon. Such act upon plain-

tiff's part is an unreasonable interference with the right of way of defendants.

It follows that the decree of the lower court should be reversed and one entered in accordance with the prayer of defendants' answer. It is so ordered.

REVERSED.   DECREE ENTERED.

BURNETT, C. J., took no part in the consideration of this case,