**PACIFIC TELEPHONE & TELEGRAPH COMPANY, a corporation, Plaintiff,**

v.

**COMMUNICATIONS WORKERS OF AMERICA, an unincorporated association, Defendant.**

Civ. No. 61–36.

United States District Court
D. Oregon.
Aug. 31, 1961.

James P. Rogers, of Hart, Rockwood, Davies, Biggs & Strayer, and D. W. Morrison, Portland, Or., for plaintiff.

Duane W. Anderson, San Francisco, Cal., and Don S. Willner, Portland, Or., for defendant.

KILKENNY, District Judge.

Action by plaintiff and counterclaim by defendant to secure declaratory judgment on certain provisions of a collective bargaining agreement between the plaintiff and defendant. Jurisdiction is available under the Labor Management Relations Act (29 U.S.C.A. § 185), and the Federal Declaratory Judgments Act (28 U.S.C. §§ 2201, 2202).

Plaintiff is engaged in the business of transmission of communications in interstate commerce. Defendant, a labor organization, is representing employees of plaintiff in the state of Oregon. Since February 4, 1960, an agreement has been in effect between plaintiff and defendant governing the terms and conditions of employment of plaintiff's employees in said state. On February 4, 1960, one Douglas Johnson and two other employees of plaintiff represented by defendant were suspended. The reason given by plaintiff for the disciplinary suspension was that said employees had violated one of plaintiff's rules which prohibited employees driving one of plaintiff's vehicles an unnecessary distance to purchase gasoline. The suspension was for a period of approximately six hours and each of the employees lost six hours' pay.

Defendant, through its proper officials, invoked the grievance procedures of the contract and all steps thereof were observed by plaintiff and defendant. During the course of processing the grievance the plaintiff agreed to and did rescind the suspension of two of the employees and paid said employees their lost pay. Plaintiff did not rescind the suspension of Johnson, the driver of the vehicle. Upon exhaustion of the grievance procedures defendant requested that the disciplinary suspension of Johnson be submitted to arbitration and plaintiff refused such request. "Disciplinary suspension" or "suspension for disciplinary reasons" as used by the *plaintiff* in the area covered by the contract means the disciplining of an employee by prescribing an off-work-without-pay status for a period of time insufficient to adversely affect the employee's benefit rights, seniority or employment status. By this usage such suspensions are for less than one calendar month. Such terms have never been defined by agreement of the plaintiff and defendant.

The plaintiff contends that the suspension of an employee for disciplinary reasons, such as the suspension of the employee Johnson, is subject to the provisions of the grievance procedure of the contract, but is not subject to those provisions of the contract which provide for arbitration. Defendant contends that such suspension involves a dispute which requires the interpretation and application of the collective bargaining agreement and that such dispute is subject to arbitration.

The solution to the problem requires a proper construction and interpretation of those general provisions of the contract which deal with arbitration,[1] the special

1. Article 13. Arbitration
  "Sec. 1301. Except as otherwise provided in this Contract, if a grievance has been handled in accordance with the provisions of Article 6 of the General Section of this Contract and has not been satisfactorily adjusted, either party within thirty (30) days after the grievance has been referred for settlement to the

Vice President and General Manager or his authorized representative or, in the case of a Company grievance, the officer of the International Union directing District 9 of the Union, may request that the grievance be arbitrated. After such request has been made, the grievance shall be arbitrated subject to the following conditions:

arbitration provisions in connection with dismissals,[2] and those provisions outlining the procedure on grievances.[3]

Over the objection of defendant, plaintiff introduced evidence, both oral and documentary, to show that the contract in question grew out of a continuous sequence of contractual negotiations between plaintiff and defendant over the course of many years and that

"(a) The provisions for arbitration shall apply only to controversies between the Union and the Company regarding the true intent and meaning of any provision of this Contract, or regarding a claim that either party hereto has not fulfilled a commitment made in this Contract. * * *"

2. Article 8. Dismissals

"Sec. 8.01 The Company recognizes the right of the Union to assist an employee who has been suspended pending investigation or who has been given notice of dismissal, or who has been dismissed, in presenting and/or appealing his case to the Company, subject to the following:

"(a) Any dismissed employee shall have the right to have his case investigated by successive levels of Management in his particular department, up to and including the general department head and/or his authorized representative, provided he requests such investigation within ten (10) days of the notice of dismissal.

"(b) In the event any regular employee having six (6) months' or more net credited service is dismissed, the matter shall be subject to the grievance procedure set forth in Article 6, of the General Section of this Contract, provided the dismissed employee makes written request to the Company for such procedure within ten (10) days of the date of dismissal, but the matter shall not be subject to arbitration. If it is agreed that the employee should be reinstated, the terms of such reinstatement shall be settled by agreement.

"(c) In the event any regular employee having two (2) years' or more net credited service is hereafter dismissed, (except for misconduct), and the matter is not settled under the grievance procedure as provided in sub-paragraph (b) of this Section, either party may require that the matter be submitted to arbitration pursuant to the provisions of Article 13, of the General Section of this Contract, but in such case the decision or action of the Company shall be controlling unless shown to have been in bad faith and only the question of bad faith shall be subject to arbitration. * * *"

3. Article 6. Grievance Procedure

"Sec. 6.01 The Company and the Union recognize the right of any individual employee or group of employees to present grievances to Management representatives of the Company. Grievances shall receive fair, just and speedy consideration, and shall be handled without prejudice or discrimination. Any employee having a grievance may at his option:

"(a) Present the grievance to a Union representative who shall first take up the grievance with the employee's immediate supervisor and shall endeavor to settle the grievance at this stage. If the grievance is not so settled, it may be referred to such successive levels of Management in the employee's particular department up to and including the general department head and/or a representative designated by him, as may be necessary to have such grievance adjusted. The Union representative may present the grivance initially at a higher Management level up to and including the general department head and/or a representative designated by him if the Management representative to whom the grievance is presented agrees to this procedure, or .

"(b) Present the grievance to his immediate supervisor and/or such other successive levels of Management in his particular department, up to and including the general department head and/or a representative designated by him, as may be necessary, and have such grievance adjusted, without the intervention of the Union representative, as long as the adjustment is not inconsistent with the terms of this Contract, and provided further, that the Union representative has been given opportunity to be present at such adjustment.

"(c) In the event the grievance is not settled by the procedure outlined in Section 6.01(a) or (b) of this Article to the mutual satisfaction of both parties, signed statements setting forth the disagreement shall be prepared by each party. A copy of these statements shall be forwarded to the Vice President and General Manager or his authorized representative, upon receipt of a request from the Oregon Director of the Union, shall meet with the representatives of the Union at a mutually agreeable time not later than fifteen (15) days thereafter and endeavor to settle the controversy. * * *"

during the course of such negotiations the plaintiff was contending that disciplinary suspensions were a function of management and not subject to arbitration, while the defendant was contending that such suspensions should be subject to arbitration. Likewise, during those negotiations the parties generally construed the language of Article 13 not to require arbitration on this subject. The Court reserved ruling on the admissibility of this evidence, indicating that it might be considered for the purpose offered, i. e., to place the Court in the position of the contracting parties. While evidence may be received for such purpose, Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; Seaver v. United States Plywood Corporation, 9 Cir., 1959, 273 F.2d 36; ORS [4] 42.220, 42.230, it cannot be used to change, vary or contradict the terms of the written instrument and all prior and contemporaneous agreements were merged therein and cannot be shown by parol evidence. Commodity Credit Corporation v. Rosenberg Bros. & Co., 9 Cir., 1957, 243 F.2d 504; Taylor v. Wells, 188 Or. 648, 217 P.2d 236. The parties agree that the contract is unambiguous. Where the instrument is unambiguous, parol evidence is not admissible to show the alleged intention of a party. United States National Bank of La Grande v. Miller, 122 Or. 285, 258 P. 205, 58 A.L.R. 339; Anson v. Hiram Walker & Sons, 7 Cir., 1955, 222 F.2d 100.

The word "grievance" is not defined in the contract. However, such word as used in collective bargaining agreements is not a term of art having a connotation distinct and apart from its meaning in ordinary use. Timken Roller Bearing Co. v. N. L. R. B., 6 Cir., 1947, 161 F.2d 949, 955. Collective bargaining agreements, like other contracts, must be read as a whole and in the light of the law relating to them when made. Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309.

Both parties concede that the suspension of Johnson was a "grievance" which qualified for processing under the rules of procedure outlined in Article 6. As a matter of fact, the particular grievance was prosecuted by defendant under such rules of procedure. There was no disagreement between the parties on the procedure to be followed until the parties were unable to settle the controversy pursuant to the provisions of Article 6, § 6.01(c). To that point, at least, the parties agreed that the suspension in this case was a grievance which was covered by the contract. We might well invoke here the rule that the practical interpretation of the terms of a contract made by the parties while performing it is deemed a safe guide to the intended meaning of the contract. Lease v. Corvallis Sand & Gravel Co., 9 Cir., 1950, 185 F.2d 570; Kontz v. B. P. John Furniture Corporation, 167 Or. 187, 115 P.2d 319. Since the controversy was not settled in the procedure outlined in Article 6, defendant demanded arbitration pursuant to the provisions of Article 13, § 13.1(a). With certain exceptions, this provision of the contract provides that if a grievance has been handled in accordance with the provisions of Section 6 and has not been settled, either party, within thirty days, may request that the grievance be arbitrated, provided that such grievance gives rise to a controversy regarding the true intent and meaning of any provision of the contract, or regarding a claim that a requirement of the contract has not been fulfilled. It is abundantly clear that disciplinary suspensions are grievances which would be subject to arbitration unless excluded by the provisions of said subdivision (a). In other words, all grievances, with the exception of dismissal of an employee having more than six months and less than two years credited service (Article 8, subsections (b) and (c)) and those under Article 3, Section 3.02 which provide for the use of the grievance procedure and arbitration on the presentation of a ques-

4. Oregon Revised Statutes.

tion of discrimination or bad faith in connection with employee's pensions, disability and death benefits, are subject to arbitration. Noteworthy is the fact that only the question of bad faith is subject to arbitration on a dismissal of an employee with over two years' service. No explanation is given, nor is there one apparent, for refusing arbitration on dismissal of employees whose service is more than six months and less than two years, when no such provision is made with reference to suspensions of employees or those who have a service record of less than six months. However, the fact that disciplinary suspensions were not specifically mentioned does not lead to the conclusion that the controversy in question is not subject to arbitration. If it were not for the indefinite provisions of Article 8, the provisions of Article 13 with reference to arbitration would be quite clear. Article 8 is an exception to the general arbitration provisions in Article 13. Where there is an exception or reservation in a contract, it is presumed that no other exceptions or reservations are intended. Fendall v. Miller, 99 Or. 610, 196 P. 381. The law will not insert by construction, for the benefit of one of the parties, an exception or condition which the parties, either by design or neglect, have omitted by their own contract. Montgomery v. Board of Education, 102 Ohio St. 189, 193, 131 N.E. 497, 15 A.L.R. 715; Goodman v. Sullivan, 94 Ohio App. 390, 114 N.E.2d 856, 858.

Having made an analysis of the contract, I will now consider two recent decisions of the United States Supreme Court, conceded to be of primary importance by both parties. Plaintiff attempts to distinguish each of these cases from the factual background and the contract in this case, and the defendant claims that each of the cases is almost exactly in point. Let us first consider U. S. Steel Workers v. American Mfg. Co., (1960) 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432. Here, the union instituted an action to require the arbitration of a question of re-hiring one of its members. The member left the company's employment because of an injury. He applied for and received disability compensation. Sometime after complete recovery he applied for re-employment. The company refused on the ground that he was physically unable to perform the required functions of his job. The parties then used the grievance procedure as outlined in the contract and when the controversy was not settled by that procedure, the union demanded arbitration on the issue of re-hiring. The contract contained no provision with reference to re-hiring. The union claimed the subject was covered by the seniority clause of the contract. The trial court ruled in favor of the company, which decision was affirmed by the Court of Appeals. In that case the contract provided for arbitration in all disputes between the parties as to the meaning, interpretation and application of the provisions of the agreement. The United States Supreme Court, in reversing the decisions of the lower courts, pointed out that the union claimed the company had violated a specific provision of the contract, that is, the seniority clause, and that the company took an opposite position. This, said the Court, constituted a dispute between the parties as to the meaning, interpretation and application of the agreement and that arbitration was required. The Court criticized the lower courts for examining into the merits of the case and held that a Court's sole function on a question such as this is to decide whether the parties agreed to arbitrate the issue in question.

In U. S. Steel Workers v. Warrior & Gulf Navigation Co., (1960) 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, the employer contracted with a third concern with reference to certain services to be performed for the employer. At the precise time of making this contract many union member employees of the company were not working. The work which was contracted out to the third person had previously been done by the company's own employees. The agreement between the union and the company included a no strike, no lock-out agree-

ment. The union presented a grievance against the company on the theory that the company had violated the agreement by inducing a partial lock-out of union employees. The union demanded arbitration. The company claimed that the subject, not being specifically mentioned in the contract, was not subject to arbitration.

The contract in Warrior required arbitration on all differences as to the meaning and application of the provisions of the agreement. This contract also carried a provision that " * * * matters which are strictly a function of management should not be subject to arbitration under this section." The clause which prohibited arbitration of matters which were strictly a function of management had been the subject of contract between the parties for many years and during those years the union had continually attempted to include a clause which would prohibit contracting out of work by the company. On that contract the union had attempted to include such a clause. The lower court held in favor of the defendant company and the Court of Appeals affirmed that decision. (5 Cir., 269 F.2d 633) It was the theory of the lower courts that the decision on whether work was to be performed by contracting it out or whether it should be performed by members of the union was strictly a function of management and was therefore not subject to arbitration. In arriving at this conclusion the courts took into consideration at least part of the evidence with reference to negotiations leading up to the signing of the contract in question. In reversing these decisions the Supreme Court held that a direction to arbitrate a particular grievance should not be withheld unless it might be said with positive assurance that the arbitration clause was not susceptible of an interpretation which might encompass the alleged controversy and that the doubts, if any, should be resolved in favor of arbitration. The Court then goes on to observe that in the absence of an express provision excluding a particular grievance from arbitration and

where the exclusion clause is vague and the arbitration clause quite broad, the issue should be resolved in favor of arbitration.

Both American and Warrior hold that there is a strong public policy in favor of arbitration of disputes between labor and management and that it is the duty of the Court to direct arbitration on unresolved issues between those parties, where there is a broad arbitration clause, and unless the particular issue has been specifically excluded or is clearly outside of the provisions of the arbitration clause. The arbitration clause in the present contract is quite broad. With certain exceptions, the parties agreed to arbitrate all controversies between them regarding the true intent and meaning of any provision of the contract or regarding any claim that either party has not fulfilled a requirement of the contract.

Defendant claims that Johnson's disciplinary suspension was not warranted under the terms of the contract for various reasons, including the claim that Article 8 provides for an exclusive method of disciplinary action against an employee and that the company has no right or authority under the contract to suspend an employee for alleged disciplinary reasons. Plaintiff construes the contract otherwise. Obviously, the controversy between the parties involves the true intent and meaning of the contract, the determination of which is for the Board of Arbitration, not for the Courts. I do not believe the absence of a no strike clause in this contract is of any significance.

It is true that segments of the evidence offered by plaintiff at the time of the trial would lead to the conclusion that the parties did not intend to make a disciplinary suspension arbitrable under the terms of the contract. These negotiations were carried on over a course of many years and it is probable that at one time defendant's representatives, including their attorneys, construed these provisions as eliminating the arbitration of this claimed function of management. However, it is entirely probable that those

representatives of defendant changed their minds and placed an entirely different interpretation on the particular language at the time of signing. In any event, I must look to the language of the contract for the solution to the problem. That part of the evidence which would change, vary or contradict the plain meaning of the contract must be rejected. The evidence offered can only be used for the purpose of placing the Court in the position of the parties at the time of the signing of the contract. In expressing myself on the effect of the parol evidence rule and the rule of merger, I limit the effect to the construction of the contract with reference to the right to arbitration and withhold expression on the merits of the controversy as to whether a disciplinary suspension is properly a function of management.

In Local No. 725 v. Standard Oil of Indiana, D.C.N.Dak., 186 F.Supp. 895, relied on by plaintiff, the Court must have construed the contract as ambiguous and permitted parol evidence to establish the terms and conditions of the contract between the parties. Parol evidence was offered to show the prior negotiations and the understanding of the parties with reference thereto. The Court said (at p. 900), "this 'background' is perhaps the best evidence of the design or intent of the parties." Then the Court goes on to say that the evidence conclusively establishes that both the scope of the arbitration clause and the subject of the contracting out had been issues in prior negotiations and had been the subject of discussion and negotiation. The Court then found that the parties agreed that contracting out of maintenance work was the function of the employer. In passing on the subject the Court said, "the evidence as to this is not only forceful—it is overwhelming." Nowhere in the opinion does the Court mention the parol evidence rule nor the rule which requires that prior negotiations be merged in the contract itself. N. L. R. B. v. Gulf Atlantic Warehouse Co., Fifth Circuit, June 12, 1961, 291 F.2d 475, decided after American and Warrior, emphasized the fallacy of attempting to use such evidence in holding that the language of the contract as finally agreed upon between the parties must be construed by the Court in accordance with the ordinary rules of construction without reference to the give and take of the bargaining sessions which produced the final terminology. In rejecting the use of parol evidence and prior negotiations in that case, the Court observed, "Otherwise, we would abandon completely the parol evidence rule when dealing with this type of contract."

Plaintiff is of the belief that Local 201, International Union of Electrical, Radio & Machine Workers v. General Electric Company, 1 Cir., 1960, 283 F.2d 147, demonstrates that the decisions in American and Warrior have no application to our contract. I do not read General Electric in that light. The facts in that case are readily distinguishable from the facts in Warrior and American, and likewise distinguishable from the facts here under consideration. In General Electric the parties limited arbitration to disputes arising out of breaches of *local understandings* only if such *understandings* were in writing and signed by each of the parties. Chief Judge Woodbury calls attention to the fact that the Union, by its own admission, at no time signed the *local understanding* in question. This was a specific exclusion from the general arbitration agreement, not an indefinite exclusion, such as we have in the present case.

Being of the belief that American and Warrior control the decision in this case, a discussion of other cases decided prior to the controlling decisions would add nothing but extra pages to this opinion.

During the course of the trial, defendant offered in evidence a copy of the award of the arbitration committee on the disciplinary suspension of one Seymour H. Singer, an employee of plaintiff in the Northern California area. This award was made under a different contract. The offer is rejected.

The facts being fully agreed, no findings are necessary. Counsel for defend-

ant shall draft, serve and present a judgment requiring plaintiff to submit to arbitration the legality of the disciplinary suspension of the employee Douglas Johnson in the light of the true meaning and intent of the contract.

