WESTBURY COAL MINING PARTNERSHIP

v.

J. S. & K. COAL CORPORATION

Record No. 831660

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

---

\* Justice Cochran participated in the hearing and decision of this case prior to the effective date of his retirement on April 20, 1987.

(*Mark M. Lawson; White, Elliott & Bundy*, on brief), for appellant. Appellant submitting on brief.

No brief or argument for appellee.

POFF, J., delivered the opinion of the Court.

This appeal questions the chancellor's construction of a written contract.

Westbury Coal Mining Partnership (Westbury) is a limited partnership, and J. S. & K. Coal Corporation (the contractor) is a corporation. Both were organized under the laws of the Commonwealth with principal offices in Richlands. By contract dated January 1, 1980, the contractor agreed to conduct coal mining operations on land leased to Westbury. Subsection 13(b) of Article IV of the contract provided that the contractor "shall pay all fees and taxes, required by law, and shall comply with all laws, ordinances, governmental rules and regulations relative to the work (excluding coal severance tax)." The contract required the contractor to furnish Westbury "[c]opies of all documents or forms [evidencing] compliance with this subsection".

At that time, the federal government imposed an excise tax of 50 cents per ton on the sale of each ton of coal produced from underground mines. 26 U.S.C. § 4121(a)(1) (1982). The revenues were used to finance the Black Lung Disability Trust Fund for the benefit of disabled coal miners. The contractor mined coal for Westbury until late 1981, filed the tax returns, paid the taxes due for taxable years 1980 and 1981, and supplied Westbury with copies of the returns. During the course of mining operations, the Internal Revenue Service promulgated a regulation interpreting the statute to impose responsibility for the tax on the owner of the coal, and learning of this, the contractor applied for a refund of the money it had paid. The IRS advised Westbury that it was the party liable under the law and regulations for payment of "black lung" taxes, and that the contractor's application would be granted.

In a bill of complaint filed against the contractor, Westbury alleged that the contractor had agreed that it "would be responsible for paying federal manufacturer's excise taxes" and that "fifty cents [of the per-ton fee paid to the contractor] was being trans-

ferred . . . to the Contractor solely for the purpose of paying said tax". Westbury asked the chancellor to impose a constructive trust and require the contractor either to pay the refund to Westbury or to return it to the IRS.

At a hearing on Westbury's motion for an injunction *pendente lite*, the chancellor permitted Westbury's witnesses to testify concerning oral conversations during the course of contract negotiations. David W. Gannalo, Westbury's chief executive officer, testified that the coal severance tax imposed by the Commonwealth and the federal black lung excise tax were two of the topics discussed. Gannalo said that, in answer to the contractor's inquiry concerning subsection 13(b) as originally drafted, he had assured the contractor that it was not required to pay the coal severance tax and that, at the contractor's request, "we wrote that in." However, Gannalo said, the parties agreed that the contractor would assume the duty of filing the returns and paying the assessments of the black lung taxes and, for that purpose, that Westbury would increase the contract payment by 50 cents per ton. Asked why Westbury did not make the payments directly to the IRS, Gannalo replied: "We were working under the theory, as previous contracts and conversations had established, that this was something that related to their employees; therefore, it was their obligation to pay it. If, in fact, we had to pay it, we would have withheld it from them since it related to their employees. But, as we agreed, we would give it to them and they in turn would pass it over to the Government." The IRS regulation clarifying the identity of the taxpayer contemplated by the statute was not promulgated until nearly a year after execution of the contract. 26 C.F.R. § 48.4121-1 (1986).

The chancellor denied the motion for an injunction *pendente lite*, made a transcript of this testimony a part of the record, and scheduled a second hearing. No evidence was adduced at that hearing, and the argument focused again upon the language of subsection 13(b) of the contract. Counsel for the contractor construed that language to mean "that we only agreed to pay all taxes, which we were required by law to pay." The contractor argued that, because the federal statute and the interpretive regulation imposed the obligation to pay the black lung tax on Westbury, its obligation under the contract did not extend to the federal tax and, hence, that it was entitled to the refund.

The chancellor found that the contract was unambiguous and adopted the contractor's construction of subsection 13(b). Specifically, he ruled that "the fees and taxes that are required by law . . . would be the ones that were required of the contractor", declined to consider parol evidence contradicting that interpretation, and dismissed the bill of complaint.

On appeal, Westbury argues that, if the chancellor was correct in his ruling that the contract was unambiguous, the chancellor misconstrued and misapplied its language. We agree.

■ We reach our decision without benefit of the extrinsic evidence of contemporaneous oral agreements or evidence of the conduct of the parties in the performance of the contract. "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Company* v. *Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965). "The pole star for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used . . . .* It is the court's duty to declare what the *instrument itself* says it says." *Ames* v. *American Nat. Bank*, 163 Va. 1, 38, 176 S.E. 204, 216 (1934) (emphasis in original).

■ In the words employed in subsection 13(b), the contractor was obligated to "pay all fees and taxes, required by law . . . relative to the work (excluding coal severance tax)." In his construction of this section, the chancellor added words which had the effect of creating additional exclusions. In the construction of a contract, courts have no power "to read into it words of exclusion not contained therein". *Montague Mfg. Co.* v. *Homes Corp.*, 142 Va. 301, 311, 128 S.E. 447, 450 (1925).

> The law will not insert by construction, for the benefit of one of the parties, an exception or condition which the parties, either by design or neglect, have omitted by their own contract. Montgomery v. Board of Education, 102 Ohio St. 189, 193, 131 N.E. 497, 15 A.L.R. 715; Goodman v. Sullivan, 94 Ohio App. 390, 114 N.E.2d 856, 858.

*Pacific Tel. & Tel. Co.* v. *Communications Wkrs. of Amer.*, 199 F. Supp. 689, 693 (D. Or. 1961).

It is a well-settled rule of law that, where there is an exception or reservation of one thing, it will be presumed that

no other exceptions or reservations are intended than those expressed.

*Fendall* v. *Miller*, 99 Or. 610, 617, 196 P. 381, 383 (1921); *accord Royal Indemnity Co.* v. *John F. Cawrse Lumber Co.*, 245 F. Supp. 707, 710 (D. Or. 1965).

■ The import of the word "all" is one of total inclusion, admitting of no exclusion or exception by implication. Resting our decision, as we did in *Ames*, upon "what the *instrument itself* says it says", we hold that the contractor is contractually obligated to pay *all* taxes related to the coal mining operation other than the tax *expressly* excluded by the contract. We will reverse the decree and remand the cause to the chancellor with instructions to enter a new decree consistent with our holding.

*Reversed and remanded.*