966 F.2d 1442
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HAMPSHIRE HOMES, LIMITED, Plaintiff-Appellant,
v.
FOX CHASE, INCORPORATED; B. Mark FRIED, individually,
Defendants-Appellees.
ATLANTIC BUILDERS, LIMITED, Defendant.
 No. 91-1621.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1992
Decided: June 8, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-90-1514-A)
 ARGUED: Leo W. Dunn, Jr., Dunn & Emig, P.A., Greenbelt, Maryland, for Appellant.
 Paul A. Kaplan, David & Hagner, P.C., Washington, D.C., for Appellees.
 ON BRIEF: Marc R. Engel, David & Hagner, P.C., Washington, D.C., for Appellees.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Hampshire Homes, Ltd. appeals the district court's entry of summary judgment in favor of defendants Fox Chase, Inc. and B. Mark Fried. The district court held that appellee had not breached a clause in the contract which prohibited the sale of lots to non-builders. After a thorough review of the record, we affirm the judgment of the district court.
 
 I.
 
 2
 Plaintiff-appellant Hampshire Homes, Ltd. ("Hampshire Homes"), a home builder, and defendant-appellee Fox Chase, Inc. ("Fox Chase"), a landowner, entered into a lot purchase agreement in September, 1988 in which Hampshire Homes agreed to purchase 38 subdivision lots in Spotsylvania County, Virginia from Fox Chase. Hampshire Homes planned to build single family homes on the lots for sale to individual buyers. After the parties executed the agreement but before closing occurred, Hampshire Homes became concerned that the sale of the remaining lots in the subdivision to individuals rather than builders would devalue those lots Hampshire Homes had already agreed to purchase. In an amendment to the agreement executed two months later, the parties agreed that Hampshire Homes would purchase 22 rather than 38 lots, and that Fox Chase would sell its remaining lots to "builders" (as defined in the amendment) so long as Hampshire Homes had any "unsold product" remaining in Fox Chase. The relevant portion of the Amendment, Paragraph 2(i), provides:
 
 
 3
 Seller shall not convey any lots in the Spotsylvania County sections of the FOX CHASE subdivision to other than a builder for so long as Purchaser has any unsold product remaining in FOX CHASE. For purposes of this paragraph, "builder" shall be deemed to be a purchaser of four (4) or more lots.
 
 
 4
 After closing, Hampshire Homes decided to delay the construction of homes at Fox Chase indefinitely because of the depressed real estate market in Spotsylvania County. The central dispute in this case arises from Fox Chase's conduct after Hampshire Homes informed Fox Chase of its decision to postpone construction. In three transactions between July, 1989 and April, 1990, Fox Chase sold a total of five (5) lots to Atlantic Builders ("Atlantic"), a homebuilding corporation of which defendant-appellee B. Mark Fried's son was president. Approximately 15 months after closing, when Hampshire Homes had still not begun construction, Fox Chase resumed its efforts to sell lots to individuals.
 
 
 5
 Hampshire Homes instituted this action for rescission of the contract and for damages as a result of Fox Chase's sale of lots to nonbuilders. The complaint alleged breach of contract, actual fraud, constructive fraud, and intentional interference with contractual relations. Hampshire Homes argued that Atlantic is not a builder as that term is defined in the contract because it never purchased four lots in any one transaction, and that Fox Chase never intended to honor the Amendment because it had an "oral understanding" with Atlantic for the purchase of two lots at the time the Amendment was executed. Hampshire Homes also maintained that appellee B. Mark Fried tortiously interfered with the agreement between Hampshire Homes and Fox Chase by exerting improper influence over Atlantic through his son, the president of the corporation, and through other familial ties he has to Atlantic.
 
 
 6
 Fox Chase moved for summary judgment and the district court determined that Fox Chase had not breached the agreement by selling individual lots because Hampshire Homes had no "unsold product" at any time after the amendment was executed. The court explicitly found that the contract term "product" meant lots with homes built by appellant, not merely lots. Because Hampshire Homes never began construction of homes on any of the lots, the court reasoned that the restriction in Paragraph 2(i) of the Amendment against sales to nonbuilders was not operative at the time of the alleged breach. Without proof of breach of contract, the district court found that Hampshire Homes could not maintain its other tort claims against Fox Chase. The court entered summary judgment in favor of Fox Chase on all of appellant's claims. Hampshire Homes now appeals.
 
 II.
 
 7
 This Court reviews the entry of summary judgment de novo and applies the same legal standards that the district court employed when considering the motion for summary judgment. Kowaleviocz v. Local 333 of International Longshoremen's Assn., 942 F.2d 285, 288 (4th Cir. 1991). Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On review, we draw all factual inferences in the light most favorable to the nonmoving party. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990), cert. denied, 111 S. Ct. 1018 (1991). The entry of summary judgment must be affirmed if, after viewing the record as a whole, a rational trier of fact could not find for the party opposing the motion. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 III.
 
 8
 The thrust of Hampshire Homes' argument on appeal and the basis of its claims for rescission and money damages is that Fox Chase breached the amendment to the lot purchase agreement by selling five lots in three separate transactions to Atlantic. The amendment defines a "builder" as a purchaser of four or more lots, and Hampshire Homes contends that Atlantic was not a builder within this meaning because Fox Chase sold less than four lots in each of the three transactions with Atlantic. The language of the amendment, however, prohibits Fox Chase from selling lots to non-builders only"so long as [Hampshire Homes] has any unsold product remaining in Fox Chase." Thus, Hampshire Homes cannot prevail on a breach of contract theory unless it had "unsold product" at the time Fox Chase allegedly sold lots to Atlantic or to other individual buyers.
 
 
 9
 The meaning of the contract term "unsold product" is central to this dispute. Both in its motion for summary judgment and on appeal, Fox Chase has argued that "unsold product" refers to lots with houses built on them. Fox Chase asserts that Paragraph 2(i) of the Amendment did not become operative until appellant began constructing homes, thereby creating "product" for sale. Because Hampshire Homes decided to postpone construction indefinitely on all the lots it owned in the development, Fox Chase maintains that the amendment never became effective, and, therefore, it could not have breached the contract because the amendment was not operative at the time of the sales to Atlantic and individual buyers. Hampshire Homes asserts that the parties intended the term "unsold product" to mean lots only. Under this theory, the amendment took effect at closing, and the restriction on sales to non-builders applied at all times thereafter until Hampshire Homes had built homes on all 22 of the lots it acquired from Fox Chase and sold all such homes.
 
 
 10
 The meaning of the term "unsold product" as used in this contract requires reference to the rules of contract construction under Virginia law. Virginia applies the plain meaning rule which requires that courts read contract language which is unambiguous and capable of only one reasonable construction according to its plain meaning. Paramount Termite Control Co. v. Rector, 238 Va. 171, 174, 380 S.E.2d 922, 924 (1989). See also Appalachian Power Co. v. Greater Lynchburg Transit Co., 236 Va. 292, 374 S.E.2d 10 (1988). Courts must also avoid rendering words or clauses in the contract meaningless when they are capable of a reasonable interpretation, consistent with the contract as a whole. Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). Underlying these rules is the principle that "the pole star for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used." Ames v. American National Bank, 163 Va. 1, 38, 176 S.E. 204, 216 (1934).
 
 
 11
 When applied to the term "unsold product," these rules of interpretation demonstrate that the contract contemplates a restriction that applies only after Hampshire Homes had actually constructed houses in Fox Chase but which remained unsold. The word"product" suggests something produced or constructed, such as a house, rather than something merely bought and maintained, such as a lot. The plain meaning rule, therefore, clearly supports the district court's finding that "unsold product" means lots with houses on them in the context of this contract.
 
 
 12
 Moreover, such an interpretation of "unsold product" is necessitated by the second rule of construction which requires the Court to interpret a contract so that no word or clause is rendered meaningless and every provision is given effect. See Daugherty v. Diment, 238 Va. 520, 525, 385 S.E.2d 572, 574 (1989). Paragraph 2(i) of the amendment contains the word "lot," which appears twice, and the phrase "unsold product," which is used only once. In order to ascribe meaning to both terms, "lot" and "unsold product" can not be considered interchangeable. By employing the term "unsold product" rather than "lot," the necessary conclusion is that the parties intended the restriction to apply only after Hampshire Homes had actually built homes on the lots in the development.
 
 
 13
 Finally, the basic intent of the parties as expressed in the entire agreement clearly supports the Court's interpretation of the term "unsold product." The agreement as a whole indicates that Hampshire Homes was acquiring the lots for the purpose of constructing homes and that there was no intent on the part of the contracting parties to effectuate a wholesale conveyance to one who would then retail the lots. The intent of the parties was to create a community of homes on the property being developed by Fox Chase. Pursuant to the lot purchase agreement, Hampshire Homes bought 22 lots from Fox Chase with the express intention of constructing homes for sale to individual buyers. Unquestionably, Hampshire Homes and Fox Chase knew that the purpose of their agreement was to produce and sell houses, not lots.
 
 
 14
 Extrinsic evidence of alleged contemporaneous oral agreements or understandings and expectations of the parties about the contract is not necessary to determine the meaning of the term"unsold product." Accordingly, extrinsic evidence relating to the meaning of the amendment will not be considered. See Westbury Coal Mining Partnership v. J. S. & K. Coal Corp., 233 Va. 226, 229, 355 S.E.2d 571, 572-73 (1987) ("[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.").
 
 
 15
 Since, as heretofore set forth, the restriction in paragraph 2(i) of the amendment to the lot purchase agreement prohibited Fox Chase from selling any lots in the subdivision to a non-builder so long as Hampshire Homes had any unsold houses on any of the 22 lots it owned in Fox Chase, Fox Chase could not have breached the agreement because Hampshire Homes had no "unsold product" when Fox Chase sold lots to Atlantic and to individuals. Indeed, Hampshire Homes at no time had any product in the development because it had elected to delay construction.
 
 
 16
 Hampshire Homes' argument that Fox Chase breached the contract is not only premised on an unsupportable construction of the term "unsold product," but also on the argument that the contract requires a purchaser to acquire at least four lots in a single transaction to qualify as a builder. Hampshire Homes contends that Fox Chase breached the contract by selling five lots to Atlantic in three separate transactions while Hampshire Homes had 22 unsold lots remaining in the development. Even if we assume, contrary to the conclusion reached earlier, that "unsold product" means lots alone, Fox Chase did not violate the restriction on sales to non-builders because Atlantic, the purchaser, qualified as a builder under the terms of the contract. The amendment to the lot purchase agreement contains no language to support Hampshire Homes' position that a purchaser of lots from Fox Chase is considered a "builder" only if the purchaser acquires four (4) or more lots in one transaction. "Where ... the intention of the parties has been stated plainly, a court may not fashion a different agreement for them under the guise of contract interpretation." Davis v. Davis, 239 Va. 657, 662, 391 S.E.2d 255, 257 (1990).
 
 IV.
 
 17
 Hampshire Homes' amended complaint charged Fox Chase with breach of contract, actual fraud, constructive fraud, and tortious interference with contractual relations. Hampshire Homes requested relief in the form of rescission of the contract and damages. Since Fox Chase did not violate the terms of the lot purchase agreement as amended, summary judgment on all of Hampshire Homes' remaining claims was clearly appropriate. Without proof of breach of contract, Hampshire Homes cannot recover damages. Similarly,"rescission will not be granted for breach of a contract which is not of such substantial character as to defeat the object of the parties in making the contract ... " Neale v. Jones, 232 Va. 203, 207, 349 S.E.2d 116, 119 (1986) (quoting Bolling v. King Coal Theatres, 185 Va. 991, 996, 41 S.E.2d 59, 62 (1947)). Hampshire Homes' claims for rescission must fail because Fox Chase did not breach the contract, nor in any way frustrate the intent of the parties or the purpose of their agreement.
 
 
 18
 Hampshire Homes' fraud claim also fails because there is no clear and convincing evidence on the record to support the allegation that Fox Chase intended to defraud Hampshire Homes by selling lots to Atlantic. See Patrick v. Summers, 235 Va. 452, 369 S.E.2d 162 (1988); Winn v. Aleda Construction Co., 227 Va. 304, 315 S.E.2d 193 (1984). In addition, since there is no proof that Fox Chase "breach[ed] a legal or equitable duty," Hampshire Homes can not maintain its claim of constructive fraud. Diaz Vicente v. Obenauer, 736 F. Supp. 679, 690 (E.D. Va. 1990) (quoting Moore v. Gregory, 146 Va. 504, 131 S.E. 692, 697 (1925)). Finally, the Court properly entered summary judgment on the charge of tortious interference with contract because Hampshire Homes offered wholly unsubstantiated allegations that appellee Mark Fried acted in other than an official capacity. See generally Brown v. Loudoun Golf and Country Club, Inc., 573 F. Supp. 399 (E.D. Va. 1983).
 
 
 19
 Accordingly, the decision of the district court granting summary judgment to the defendants on all claims is hereby affirmed.
 
 AFFIRMED