## No. 10,358.

GEORGE WILSON VS. GREAT SOUTHERN TELEPHONE AND TELEGRAPH COMPANY.

| | |
|---|---|
| 41 | 1041 |
| 49 | 103 |
| 41 | 1041 |
| 118 | 737 |

Where a telephone and telegraph company has a right to erect poles and secure the same, it is negligence to so secure them by guy wires as to endanger the safety of the public.

Where a city ordinance forbids the use of the neutral ground on a street to vehicles, the prohibition does not authorize a telegraph or telephone company which has permission to erect poles and put wires thereon, to so place the wires as to endanger human life.

A driver of a fire engine has the right to cross the neutral ground at points between crossings, if it is for the purpose of arriving speedily .at a fire.

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be cause of damage to him.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies,* J.

*B. R. Forman* for Plaintiff and Appellee :

1. A private corporation has no right to erect poles and string wires through the public streets of New Orleans, without the consent of the City Council, expressed by an ordinance promulgated and produced in evidence, (Act 124 of 1880,) and is a trespasser and guilty of a public nuisance.

2. Even if it had such a grant of franchise from the City Council, it had no legal right to impede or obstruct the free use of a public street and highway. (Ib.)

3. Defendant was guilty of gross negligence and breach of duty, when it erected and maintained a guy wire along a public street much used and driven upon, within six feet of the roadway, liable at any moment to cause severe personal injury in direct violation of the express provisions of City Ordinance No. 519, C. S.

4. Such a dangerous obstruction to a public and much used street, was gross and criminal negligence, even if there had been the grant of a franchise by the City Council, and the general police ordinance No. 519 had never been passed.

5. In assessing damages where there is gross negligence and a flagrant breach of public duty, it is proper to blend the interests of society and of the injured individual, and to allow such damages as would not only fully compensate the injured person for his injuries, his pain and his sufferings, but also such as would prevent a repetition and serve as a warning. Black vs. R. R. Co., 10 Ann. 40.

Merely compensatory damages allowed in following cases: Chopin vs. R. R. Co., 17 Ann. 19, loss of a leg, $25,000 ; Summers vs. R. R. Co., 34 Ann. 139, broken elbow, $7,500 ; Ketchum vs. R. R. Co., 38 Ann. 777, loss of arm, $10,000 ; Wardle vs. R. R. Co., 35 Ann. 202, shock to spine, $5,000 ; Peniston vs. R. R. Co., 34 Ann. 778, broken leg, $6,000 ; Barksdell vs. R. R. Co., 23 Ann. 180, loss both legs, $15,000 ; Domingues vs. R. R. Co., 35 Ann. 751, bruises, $1,500 ; Spring Co. vs. Edgar, 99 U. S. 645, bruises, $6,500 ; City of Panama, 101 U. S. 453, broken arm, $15,000 ; R. R. Co. vs. Gladman, 15 Wall, 401, $9,000 ; R. R. vs. Stout, 17 Wall, 657, injured foot, $7,500 ; R. R. Co. vs. Herbert, 116 U. S. 642, loss of leg, $10,000 ; R. R. Co. vs. Mares, 123 U. S. 710, loss of both legs, $20,000 ; Miller vs. Herves, 1 Woods 363, broken ribs, $8,000 ; R. R. Co. vs. Drysdale, 51 Ga. 644, broken arm, $3,000 ; Westerville vs. Freeman, 66 Ind. 255, broken hip, $2,000 ; R. R. Co. vs. Donahue, 70 Pa. 119, loss of toes, $5,216 66 ; Campbell vs. Portland, 62 Maine 552, $9,500.

*Bayne, Denegre & Bayne* for Defendant and Appellant:

By Act 124 of 1880 (City of New Orleans vs. Telephone Co., 40 Ann. 42), the Telephone Company had the right to erect such piers, poles, abutments, constructions, etc., as might be necessary.

The company erected a guy wire on the middle or neutral ground of St. Charles avenue.

This guy wire was necessary.

The middle or neutral ground was, by city ordinance, prohibited to horses and vehicles.

The Telephone Company erected the wire at a sufficient height to avoid possibility of damage or danger to pedestrians.

It was not negligence on the part of the company that the guy wire was not sufficiently high to avoid damage to vehicles and equestrians entering upon and using ground the use of which was prohibited by city ordinances.

The plaintiff having injured himself, in consequence of a violation of the city ordinance, cannot recover.

The allowance by juries of excessive damages must be discountenanced. Peyton vs. T. & P R. R. Co., 41 Ann. 861.

The opinion of the court was delivered by

McENERY, J. The plaintiff sues the defendant company for ten thousand dollars damages for injuries sustained by a guy wire erected for the purpose of supporting the posts of said company. He alleges that the wire was erected and maintained by the defendant company with gross carelessness and negligence so as to be dangerous to the lives of people using the public highway, and that said guy wire was placed at a less distance from the ground than required by the city ordinance.

The answer of the defendant is a general denial, and avers that if the plaintiffs suffered any damage, that the same was due to his own negligence and carelessness. The case was tried by a jury, and there was a verdict in favor of the plaintiff for $1750, upon which judgment was rendered, from which the defendant company appeals.

The guy wire had been erected about three days before the accident to plaintiff, in order to sustain and strengthen the posts of the defendant company, placed on the neutral ground on St. Charles avenue. The posts are situated about three feet six inches from the street, and the guy wire was some six or seven feet above the ground, not high enough to be clear of vehicles passing on the neutral ground. Outside of the asphalt pavement, and inside of the neutral ground, about three and a half feet from the edge of the pavement there was located a fire plug, where the accident occurred.

The plaintiff was the driver for an engine company, and on the 21st of July, 1888, between 1 and 2 o'clock A. M., an alarm of fire was sounded and he was driving his engine to the fire. He was proceeding along St. Charles avenue at the usual speed with which fire engines travel to a fire. He passed the fire plug, where an engine would supply itself with water to play upon the fire in the neighborhood. In attempting to turn his engine, which had passed the fire plug only a short distance, it partly went on the neutral ground. The driver, the plaintiff, was struck by the guy wire and severely, if not seriously injured.

The telephone and telegraph company had the undoubted right to erect its poles and to secure them. But this permission does not authorize them to put them up and to secure them by wires strung so as to endanger human life. The city ordinances forbid the use of the neutral ground on St. Charles avenue to carriages and other vehicles, but this

prohibition did not authorize the defendant company to erect its wires so as to injure any one who might be trespassing upon the neutral ground. No one even to protect himself against trespassers has a right to erect death traps on his premises. The posts were placed in danger-ous proximity to the street, and ordinary prudence and a due regard for the safety of the public would have dictated that the guy wires should be placed beyond the possibillity of injuring any one. Hooker vs. Mil-ler, 18 Ann. Rep. p. 18.

A person using the street without any intention of violating the city law, might by accident be driven with a vehicle on the neutral ground. In a case of that kind it would hardly be considered that he contributed to his own accident if he should be injured by the wire.

In the instant case the plaintiff was engaged in a lawful and a laud-able purpose. There is a commendable rivalry among firemen as to who shall arrive early and do the first service. This has been often encouraged and on the approbation of the public it has become the un-written law of the city to that extent, that what might be considered furious driving under ordinary circumstances, is regarded with favor and without penalty.

The evidence shows that the engine driven by plaintiff could not turn in less than thirty-five feet space. The plaintiff had slackened his pace and was with deliberation getting his engine in position when he encountered the defendants' wire and was injured. The fire plug was placed for use in its position on the neutral ground. It was the plaintiff's duty to go to it with as little delay as possible. He exer-cised reasonable care in approaching it. We fail to ascertain from the record that he contributed by his negligence to the accident.

In comparing damages allowed in previous cases similar to this for injuries suffered from accidents inflicted by railroad and other agencies, with the amount allowed by the jury in the instant case, we think the amount is excessive. The judgment appealed from is therefore amend-ed so as to allow $1000 damages instead of $1760, and as so amended it is ordered affirmed in all other respects. The cost of appeal to be paid by plaintiff.

### DISSENTING OPINION.

FENNER, J. I cannot consider that a case of juridical negligence has been established against the defendant.

The city, by its ordinances, has assimilated the neutral ground on St. Charles avenue to a park and has prohibited horses and vehicles from going on it.

Defendant's telephone poles and the guy wires supporting them are located on the neutral ground. It is shown and the majority opinion concedes that they are placed there under competent legal authorization.

The testimony shows that guy wires are essential to the support of telephone poles bearing the weight of so many wires.

The complaint is simply, that in their erection care was not taken to make them safe for the passage of horses and vehicles.

The place was not a highway for horses and vehicles which were prohibited by law from passing thereon.

I think the defendant was not bound to provide against injury resulting from such use.

I must not be understood as blaming the gallant fireman for driving across the neutral ground in order to reach a fire more quickly. Neither should I blame him if, from the same motive, he had driven across vacant private land lying along the avenue, but, in either case, he was bound to know that he was driving on a place not destined for such use, and on which obstacles thereto might lawfully exist, and, however praiseworthy his motive, I think he took upon himself the consequent risk.

I, therefore, dissent.

_____

## On Application for Rehearing.

Bermudez, C. J. The defendant company claims the right to erect such piers, poles, abutments, constructions, etc., as might be necessary, under the provisions of Act 124, of 1880, p. 168, which is a general statute, but a reference to that legislation shows that whatever be the privileges it accords to the corporations mentioned, they are coupled with the *proviso* that the ordinary use of the ways through which the same may be exercised shall not be *obstructed.*

By being allowed the right of using the neutral ground for their purposes, the company was not therefore permitted to obstruct the same, but on the contrary was bound not to interfere with its ordinary uses, one of which as is testified to, was to be driven across in cases of necessity for the extinguishment of fires.

It will not do to say that the city ordinances have prohibited the use of the middle ground to horses and vehicles, and, therefore, that the crossing in the circumstances mentioned in the opinion was illegal.

The ordinances referred to general and continual uses and in no way to special and accidental uses, demanded for public safety.

It is error to suppose that the company would have done as it pleased in relation to its poles and wires on that middle ground, without any control by law or regard to the rights of others. The company did not become the owner to any extent of that ground which is public property and the title of which could not be and was not divested in its favor.

Even had the company something of a real right in or to the same, its negligent action which has entailed such grievous injury on the plaintiff could not on that account be excused.

It is written in the law, in emphatic language: " Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it which may deprive his neighbor of the liberty of enjoying his own or which may be cause of damage to him. " R. C. C. 667, 505.

Hence the maxim : *Sic utere tuo, ut alienum non lædus.*

The company ought to have foreseen possible injury by laying the guy wire as it did. It is in fault *abinitio*. It could have laid it higher, so that, happening the occurrence which has taken place, no injury would have resulted.

Fenner, J., adheres to his original dissent.