Argued and submitted on rehearing July 29, affirmed September 23, 1924, appellants' petition for rehearing denied and costs taxed March 17, mandate issued March 29, 1925.

## L. E. KESTERSON ET AL. *v.* CALIFORNIA-OREGON POWER COMPANY.

(228 Pac. 1092.)

**Electricity—Easement of Right of Way Limited by Deed.**

1. Deed granting right of way to power company, which is specific in its terms, is decisive of limits of easement.

**Electricity—Grant Held to Give Exclusive Possession of Right of Way as Against Third Person—"Otherwise."**

2. Grant of right of way to power company, giving right to exclude persons not employees to enter, though reserving right in grantor to cultivate, and "otherwise use and enjoy it," *held* to give company exclusive possession, at least as against third parties; "otherwise" meaning only such use as had not already been granted.

**Trespass—"Trespass" Defined.**

3. Every unauthorized entry upon land of another, though without damage, is trespass.

**Electricity—Tenant of Grantor of Right of Way Piling Lumber Thereon Held Trespasser not Entitled to Recover for Negligent Destruction.**

4. Tenant, of grantor of right of way to power company, piling lumber thereon in violation of latter's granted right to exclude therefrom all but its own employees, was trespasser and could not recover from company for negligently maintaining electric wires, setting fire to lumber in absence of willful or malicious injury.

---

1.   See 9 R. C. L. 748.
3.   See 26 R. C. L. 930.
4.   See 20 R. C. L. 57.

Negligence—Complaint not Alleging Willful Injury to Trespasser Demurrable.

5. Complaint for negligent destruction of property placed by trespasser upon defendant's right of way, not alleging willful, wanton, or malicious destruction, was demurrable.

From Klamath: A. L. LEAVITT, Judge.

In Banc.

AFFIRMED ON REHEARING.

For appellants there was a brief over the names of *Messrs. Miller, Thornton & Miller, Messrs. Renner, Manning & Ganong* and *Messrs. McCamant & Thompson,* with oral arguments by *Mr. Wallace McCamant* and *Mr. H. B. M. Miller.*

For respondent there was a brief over the names of *Messrs. Morrison, Dunne & Brobeck, Mr. A. E. Reames, Mr. R. C. Groesbeck* and *Mr. D. V. Kuykendall,* with an oral argument by *Mr. Peter H. Dunne.*

BURNETT, J.—The plaintiff Kesterson, having lost by fire a sawmill, a large amount of lumber, and sundry buildings used in the operation of the mill, all of which were insured by the other plaintiffs and who have paid the insurance, join with the insurance companies in this action to recover damages which the complaint attributes to the defendant's negligence in the construction and maintenance of an electric power line of great potency over the premises whereon the lumber was piled. It is said that owing to the negligence of the defendant, one or more of its wires broke, fell upon and set fire to the lumber under the line on the defendant's right of way, and resulted in the destruction thereof and of the mill.

Both Kesterson and the defendant, as the complaint avers, claim under common grantors, the

former by a lease dated March 5, 1917, and the latter by an instrument dated May 2, 1912, in which it is denominated the second party and F. H. Downing and T. J. Downing with their wives are named as parties of the first part. Omitting the recital of the parties, the attesting clause, signatures and acknowledgments, the writing of May 2, 1912, under which the defendant claims reads thus:

"WITNESSETH; that the said parties of the first part for and in consideration of the sum of One Dollar Gold Coin of the United States to them in hand paid, the receipt whereof is hereby acknowledged, do by these presents grant, bargain, sell and convey to said party of the second part a right of way for its pole and wire line cross that certain real property, situated in Klamath County, Oregon, and more particularly described as

"N. ½ of NE. ¼, SW. ¼ of NE. ¼ and the W. ½ of SE. ¼ of Section 5 T. 41 S. R. 8 W. M. Oregon. Said right of way to be 50 feet wide, 25 feet on the west side and 25 feet on the east side of the pole and wire line as now surveyed through said premises.

"Said second party shall have the right to dig holes for and erect its poles, cross arms and wires along said line and to maintain the same, and to cut all brush and trees therefrom and at all times to enter said premises and to do what is reasonable, proper and necessary thereon; and to maintain gates at all fences crossed by said lines and keep private locks thereon, and to permit no one, except employees of the said party to enter therein. Said first parties, however, reserving the right to cultivate said right of way and otherwise use and enjoy the same. The party of the second part agrees to reset any pole or poles, the moving of which may be necessary on account of mining operations by said parties of the first part, on notice duly given. * *

"It is further understood and agreed that the party of the second part agrees to pay to the party of the first part any reasonable damage sustained by the

party of the first part caused to growing crops or to livestock caused by break in wires or by traveling over said right of way. The party of the second part further agrees to wire the buildings of the party of the first part by wiring the house for 10 lights and two lights for the barn, to his entire satisfaction.''

In substance the contention of the plaintiffs is that Kesterson's lease of March 5, 1917, included the land composing the right of way described in the document of the earlier date of May 2, 1912; that, as permitted by his lease, he piled his lumber on that right of way where afterwards it was burned as stated; and consequently, that the defendant is liable as for negligence.

On demurrer to the complaint, wherein both the instruments appear as exhibits, the defendant maintains that in placing his lumber on the right of way as created by the writing of May 2, 1912, Kesterson was a trespasser to whom, or to whose property, the defendant owed no duty further than to avoid the infliction of willful or wanton injury and that, as the complaint does not charge such a tort, it does not state facts sufficient to constitute a cause of action. The Circuit Court sustained the demurrer and ultimately dismissed the action, as the plaintiffs did not amend or further plead. They therefore appealed. After a hearing in Department No. 2 of this court, the judgment appealed from was reversed, Mr. Justice McCourt writing the opinion reported in 221 Pac. 826. Subsequently, a rehearing was granted, the cause was reargued before the whole court, and it has had our renewed consideration.

1. In treatment of the subject in hand, the right of the defendant by virtue of the instrument of May 2, 1912, will be considered as an easement and not as an estate in fee simple. Relating to easements, Mr.

Justice BEAN, pronouncing judgment in *Fendall* v. *Miller,* 99 Or. 610, 615 (196 Pac. 381), said,

"If the grant is specific in its terms, it is decisive of the limits of the easement. On the other hand, where the easement is not specifically defined, the rule is that it need be only such as is reasonably necessary and convenient for the purpose for which it was created."

In *Ruhnke* v. *Aubert,* 58 Or. 6, 11 (113 Pac. 38), Mr. Justice McBRIDE was considering the same subject connected with a right of way for a ditch. The easement was expressed in a clause in a deed as "the right to use water therefrom according to their interest." After imputing to this language the effect of passing naturally and ordinarily an inheritable estate, the opinion goes on to say,

"and plaintiffs have the laboring oar to establish the proposition that some other or less estate was intended and this must be done, not *dehors* the deed, but from the deed itself."

With this canon of construction in mind, let us approach the interpretation of the paper delineating the rights of the defendant with a view of ascertaining its corresponding duty to Kesterson and those claiming under him by subrogation. It is not a question of how little the enjoyment of the grantor's fee-simple estate is to be restricted as if we were considering a case "where the easement is not specifically defined" as Mr. Justice BEAN phrases it in *Fendall* v. *Miller, supra.* Here we have a deed under seal which bargains, sells and conveys a right of way "50 feet wide, 25 feet on the west side and 25 feet on the east side of the pole and wire line as now surveyed through said premises," meaning the larger tract of 200 acres owned by the grantors. This deed

"is specific in its terms" and "decisive of the limits of the easement." *Fendall* v. *Miller, supra.*

Precedents treating of vague and indeterminate easements, resting in parol or prescription, are not applicable here. The parties have put into their deed the exact rule to govern their relations to each other and by that they must stand or fall. We "reason not the need" of the defendant nor attempt to show how it could operate its line under conditions less favorable than those prescribed in its deed. It is confessedly entitled to all the privileges and immunities flowing from that deed and by it must be judged.

2. At the outset, we note that it is a grant of a "right of way" or passage upon which the defendant has at all times the right to enter and "do what is reasonable, proper and necessary thereon." We cannot conceive that any ordinary power line will stand perpetually without repair. This involves the necessity of hauling upon the right of way materials with which to maintain the line such as poles, insulators, cross-arms, wire, etc. How can this be accomplished if the right of way is obstructed with piles of lumber fifteen feet high as the complaint shows existed there? Again, the defendant is given the right to permit no one except its own employees to enter upon the right of way. Evidently the meaning of this language is to grant to the defendant the exclusive possession of the tract at least as against third parties.

The exception to this is the reservation by the grantors of "the right to cultivate said right of way and otherwise use and enjoy the same" and the further provision about necessary resetting of poles to avoid interference with mining operations. It is not reasonable that the phrase "otherwise use and enjoy the same" should be construed to let in every kind

of occupancy "otherwise" than cultivation, for that would defeat the very deed itself. That expression must be read in connection and as harmonizing with the grant of the continuous right of the defendant to enter the premises and to exclude therefrom all persons except its own employees. We must bear in mind that these words are part of a mere exception and that the general rule of conduct the parties prescribed for themselves is found in the preceding language of the deed. In this light "otherwise" means that the premises may be used by the grantors only as not already granted. Will it be said that in "otherwise" enjoying the land they themselves could rightfully maintain another power line on the defendant's poles, either directly or through their lessees, or open the gates and let in whomsoever wished to enter or lease it for a place of public assembly? The "otherwise" enjoyment clause cannot be construed to nullify or destroy the other provisions of the deed. On the contrary, being an exception or reservation, it is itself limited and circumscribed by them in all things outside of and beyond its specific terms. The only penalty prescribed against the defendant in the whole document is the payment of damages to livestock or growing crops caused by breaks in the wire or traveling over the right of way. Lumber of some third party is neither livestock nor growing crops. Of what benefit is it that the defendant may cut all brush and trees from the tract if that growth is to be succeeded by high piles of more inflammable lumber.

The evident design of the instrument is to give to the defendant the exclusive possession of the land as particularly bounded in the deed, except for cultivation and livestock of the grantors thereon and pos-

sible future mining operations.   Again recurring to
*Fendall* v. *Miller,* we note this language:

"It is a well settled rule of law that where there
is an exception or reservation of one thing, it will be
presumed that no other exceptions or reservations
are intended than those expressed."

The general control of the premises was necessary
to enable the defendant to protect its high-powered
line from trespassers and to avoid exposing to its
danger those who might casually approach it.   It is
fair to presume that the deed to the defendants was
drawn, having in mind the Employers' Liability Law,
Or. L., Section 6785 et seq., and such cases under it
as *Clayton* v. *Enterrpise Electric Co.,* 82 Or. 149
(161 Pac. 411), requiring at the hands of electric
power concerns a very high degree of care, making
them almost universal insurers and entailing, on their
part, the necessity of a strict control of the right of
way over which their lines are constructed and main-
tained.   The authority awarded by its deed to the
defendant to exclude from its right of way all per-
sons except its own employees is referable to just
such legislation and decisions.

The analogy is strong between high-powered elec-
tric lines and railway tracks as places of danger and
the necessity of their operators being allowed ex-
clusive control of them.   The reason of the rule is the
same in both instances.   The principle is illustrated
by the following extract from the opinion of Mr.
Chief Justice LORD in *Ward* v. *Southern Pacific Co.,*
25 Or. 433 (36 Pac. 166, 23 L. R. A. 715, 60 Am. &
Eng. R. Cas. 34, 12 Am. Neg. Cas. 516):

"The track is the private property of the company,
and was not built to be used as a highway for pedes-
trians.   Being intended for the sole use of the com-
pany, except at public crossings, the law will not

sanction its use as a footpath. Nor will the fact that people may have frequently used the track to walk on change the law, or render their act less unlawful. In some countries it is made a penal offense to go upon the track. Although it is not so with us, yet as STRONG, J., says, 'It is a civil wrong of an aggravated nature for it endangers not only the trespasser, but all who are passing or transporting along the line.' *Philadelphia & R. R. Co.* v. *Hummell,* 44 Pa. St. 378 (84 Am. Dec. 457). As the law holds the company to a high degree of responsibility for the safety of its passengers and public convenience exacts rapid transit, common justice requires that the company hould have a clear track: *Toomey* v. *Southern Pac. Co.,* 86 Cal. 374 (10 L. R. A. 139, 24 Pac. 1074). 'We hold these corporations,' said PAXSON, J., 'to a strict line of responsibility whenever passengers are injured by accidents to their trains. It follows that we should be equally emphatic as to their control of their tracks. Except at crossings, where the public have a right of way, a man who steps his foot upon a railroad track does so at his peril. The company has not only a right of way but such right is exclusive at all times, and for all purposes. This is necessary, not only for the proper protection of the company's rights, but also for the safety of the traveling public. It is not right that the lives of hundreds of persons should be placed in peril for the convenience of a single foolhardy man who desires to walk upon the track. In England it is a penal offense for a man to be found unlawfully upon the track of a railroad. It would add materially to the public safety were there a similar law here.' *Mulherrin* v. *Delaware R. R. Co.,* 81 Pa. St. 366.'' 

3. Avowedly the plaintiffs claim only under the lease of March 5, 1917, to Kesterson which is subsequent in time and junior in right to the earlier deed to the defendant of May 2, 1912. They do not claim any license or permission from the defendant to occupy the latter's right of way with stacks of lumber; neither do they claim that the defendant wantonly,

willfully or maliciously set fire to the lumber or the buildings. What then is trespass? "Every un-authorized entry on land of another is a trespass even though no damage is done, or the injury is slight." 38 Cyc. 995. In *Wilmot* v. *McPadden,* 78 Conn. 367 (65 Atl. 157, 19 L. R. A. (N. S.) 1101), Mr. Justice HAMERSLY thus enunciates the doctrine about who are trespassers and the duty of the land owner towards them:

"The owner or tenant of land has the right of exclusive possession; whoever violates this right is a trespasser; and such trespasser assumes all risk of danger which is incident to the condition of the premises; as to him the owner does not owe the legal duty of exercising care in keeping the premises in a safe condition for his use."

See, also, in our own decisions the following: *Ward* v. *Southern Pacific Co.,* 25 Or. 433 (36 Pac. 166, 23 L. R. A. 715, 60 Am. & Eng. R. Cas. 34, 12 Am. Neg. Cas. 516); *Rathbone* v. *Oregon R. R. Co.,* 40 Or. 225 (66 Pac. 909, 24 Am. & Eng. R. Cas. (N. S.) 511); *Long* v. *Pacific Ry. & Nav. Co.,* 74 Or. 502 (144 Pac. 462, 145 Pac. 1068, L. R. A. 1915F, 1151); *Haynes* v. *O. W. R. & N. Co.,* 77 Or. 236 (150 Pac. 286).

4, 5. We cannot rightly treat the case as if all the privileges of the defendant lapsed into desuetude with the initial completion of its line, so that subsequent comers can move in and occupy its right of way. Without reasonable controversy, stacking lumber fifteen feet high upon the premises deeded to the defendant, whereon its line was constructed, was a wrongful invasion of its granted right to enter upon the tract at all times and to exclude therefrom all persons except its own employees. Such conduct on the part of Kesterson constituted him a trespasser,

as to whom the complaint fails to show any violation of duty because it does not charge willful, wanton or malicious injury. The demurrer to the complaint was rightly sustained and the judgment of the Circuit Court should be affirmed.

It is so ordered.

AFFIRMED. REHEARING DENIED.

BEAN, J., dissents, and adheres to the former opinion.