Linda MUSCH and Calvin Musch,
Plaintiffs and Appellants,

v.

H–D ELECTRIC COOPERATIVE, INC.,
Defendant and Appellee.

No. 16945.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1990.

Decided Aug. 15, 1990.

Thomas Reeves Hendricks, Minn., and Brian Wojtalewicz, Appleton, Minn., for plaintiffs and appellants.

Gordon Gunderson of Gunderson, Evenson & Boyd, Clear Lake, and Charles R. Kennedy of Kennedy and Nervig, Wadena, Minn., for defendant and appellee.

**150**

MORGAN, Justice.

Calvin (Calvin) and Linda Musch (Linda) appeal an order granting summary judgment in favor of H–D Electric Cooperative, Inc. (Cooperative). We reverse and remand.

## FACTS

On the morning of October 10, 1985, Linda, Calvin, and Calvin's father, Henry Musch (Henry), were herding cattle north along the west ditch of Deuel County Road 1 toward Henry's farmyard. Linda and Calvin were on horseback, Henry was in a pickup.

As the cattle turned into Henry's farmyard, a calf broke away from the herd and started up the county road. After helping Calvin and Henry pen up the remaining cattle, Linda took off after the stray. As Linda got behind the stray, the calf bolted into the yard of Alfred and Beverly Novy (Novys). Just a few horse strides off the county road, the calf veered in a northerly direction under an unguarded guy wire. Linda never saw the guy wire and was violently knocked off her horse.

The guy wire in question supported a power pole located on the Novys' property. The pole and guy wire are owned and maintained by Cooperative and are on the Novys' property by virtue of a right-of-way easement for construction and maintenance of the power line. The easement gave Cooperative the following rights:

[T]o place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said lands all electric transmission or distribution line or system and to cut and trim all trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

In granting this easement it is understood that the location of the poles will be such as to form the least possible interference with farming operations, so long as it does not materially increase the cost of construction.

The easement did not give Cooperative the right to fence around poles or to keep trespassers out. Nor did it give any metes and bounds description of the area of the easement. The possession of the land was left to the landowners, the Novys.

To understand the condition of the accident site, it is necessary to retrace some of the history of providing power to this rural area. Initially in 1948, the Cooperative built a line of power poles running north and south, with the pole at the accident site being the southerly pole of the line. It was designated as pole # 8 and had two guy wires on it. A power line wire ran from the pole across the road easterly to service Henry's farm. In 1963, a three-phase line was added to the system, and the line was extended down the road with more poles to the south of the accident site location. At that time, one of the two guy wires, the one running south of the pole, was removed. The one running west of the pole, which later became the accident guy wire, remained.

In 1979, Novys built a home west and adjacent to Deuel County Road 1 and immediately across from Henry's farm. Pole # 8, supported by the guy wire where the accident later occurred, was located on the southeast corner of the large farmyard. Also, in 1979, the underground electric service was put into Novys' new house. Henry was present on the day when the underground electric service was run from that pole to Novys' new house and when Cooperative's employees were working at the location of the accident guy wire and electric pole. Henry testified that Cooperative employees removed a guy guard from the single guy wire that day because it was bent. Henry told them that it could just be fixed right there with a little work, but Cooperative's employees removed it and said that they had plenty of them at the shop and would replace it. The guy guard was not replaced.

Lyle Johnson, an employee of Cooperative, admitted that there may have been a guard on the accident guy wire when they

worked at that pole to extend the transmission lines to the south in 1963. Dorsey Kreger, Cooperative's supervisor, testified that the Cooperative document that recorded the underground electric service installation at Novys' in 1979 contained a note that reflected "No guy guard."

Cooperative is under the authority of the Rural Electrification Administration (REA), United States Department of Agriculture. Gary Cramer (Cramer), the manager and engineer of Cooperative, identified REA Bulletin 61–5 as a guideline for guy wires. This bulletin, issued on September 27, 1972, specified: "Guy guards should be installed where the guy is exposed to traffic, pedestrians and livestock." Cramer also identified a 1978 Summary of Engineering Items as including guidelines from the REA. It specified:

> Guy guards, or better termed guy markers, must be used on guyed transmission structures exposed to pedestrian traffic. The Code does not require that they be used on guys extending into a field where only anticipated traffic would be a slow moving farm vehicle. However, in view of past mishaps, it is suggested that guy markers be considered for use in farm fields and other areas exposed to vehicular traffic.

Alfred Novy testified that he mowed around the guy wire three or four times a year, since it was situated in his yard. Novys also maintained a vegetable garden a few yards away from the guy wire and post. Novys' yard is not fenced and the guy wire and pole are near Deuel County Road 1.

After holding a hearing, the trial court granted Cooperative's motion for summary judgment on the grounds that it owed no duty of care to Linda because she was a trespasser or licensee and, absent a showing of willful conduct, Linda was not entitled to relief.

## ISSUE

Did the trial court err in holding that Cooperative, who did not own the land and merely held a right-of-way easement, could assert the landowners' defense of no duty to use ordinary care to see that the premises were safe for a trespasser or licensee?

## ANALYSIS

The standard of review of the grant or denial of summary judgments is well established.

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118, 120 (S.D.1985); *Ruple v. Weinaug*, 328 N.W.2d 857, 859–60 (S.D.1983).

*Pickering v. Pickering*, 434 N.W.2d 758, 760–61 (S.D.1989).

First, we must determine Linda's status while pursuing the calf onto Novys' property. In *Underberg v. Cain*, 348 N.W.2d 145, 146 (S.D.1984), South Dakota recognized the traditional common law categories for those who enter onto land and are injured: trespasser, licensee, and invitee. These categories make out a sliding standard, where, as the legal status of the visitors improves, the landowner owes him or her a higher standard of care. Prosser and Keeton, Torts § 58 (5th Ed.1984). At the top of the scale, the possessor of land owes the invitee "the duty of exercising

reasonable or ordinary care for his safety and is liable for the breach of such duty." *Stenholtz v. Modica*, 264 N.W.2d 514, 516 (S.D.1978). On the other hand, the licensee and trespasser

> take the property as the visitors find it, and that the owner or occupant undertakes no duty to those visitors who come for their own pleasure or convenience, and not at his invitation or upon inducement, express or implied, from a common advantage, except that, being aware of their presence, he must not injure them willfully or entrap them.

*Underberg*, 348 N.W.2d at 146 (citation omitted).

█ Here, Linda entered on Novys' land to pursue her own benefit, retrieving the stray calf. While Novys may not have expected her to ask permission and did not object to her being there, her status is still that of a licensee. *Stenholtz, supra; see also* Prosser and Keeton, Torts § 60 (5th Ed.1984) ("licensee" used to designate person who comes upon the land with a privilege arising from the consent of the possessor, ... but is limited to those with consent and nothing more).

Since Linda was a licensee, the trial court was correct in ruling that Novys owed her no duty of ordinary care. *But,* the trial court's inquiry wrongly stopped there. For it is necessary to inquire whether Cooperative, as a mere holder of a right-of-way easement, had the right to assert Novys' defense. The trial court evidently assumed that it did and, in that leap of deductive reasoning, committed error.

█ Though South Dakota has not dealt with this identical issue, many other states have and their analysis is useful. In *Langazo v. San Joaquin Light & Power*, 32 Cal.App.2d 678, 90 P.2d 825 (1939), a boy was electrocuted by a power company's sagging line as he crossed a field with friends. Though the boy was a trespasser with regard to the owner of the land, the power company, who had a mere easement, was not allowed to take advantage of this defense. Importantly, the court noted:

> The record shows that the owner of the real property granted a "right of way" to the power company over a strip of land 20 feet in width, with the right to erect a single line of towers or poles thereon and wire suspended thereon. "The rights of any person having an easement in the land of another are measured and defined by the purpose and character of that easement; and the right to use the land remains in the owner of the fee so far as such right is consistent with the purpose and character of the easement." 17 Am.Jur. 993. Appellant had no right to fence the right of way, nor did it have any right to the use or possession thereof, except for limited purposes, such as repair, maintenance and construction, as set forth in the grant. Thus, except for the reservations made in the grant, the owner had the same complete dominion and control over this 20-foot strip as he had over the remainder of his property. For the reasons given, the weight of authority in this country is to the effect that although decedent may have been a trespasser as to the owner of the real property, the power company cannot take advantage of that fact.

32 Cal.App.2d at 682, 90 P.2d at 829.

Similarly, Cooperative's right-of-way easement gave it limited use of Novys' land. It was not permitted to fence its easement to exclude people; it was present for the limited purposes of repair, maintenance and construction. Except for the reservations made, Novys had complete dominion over the property. Therefore, Cooperative cannot avail itself of the landowners' defenses.

The Vermont Supreme Court echoed these same thoughts in *Humphrey v. Twin State Gas & Electric Co.*, 100 Vt. 414, 139 A. 440 (1927). In *Humphrey*, a boy who was trespassing was killed by a low-hanging electric wire. The electric company had an easement to run the wire across the property. Importantly, the court noted why the electric company's easement did not allow them to use the defense of trespass:

> A trespass is an injury to the possession; and, as it is only he whose possession is disturbed who can sue therefor,

so it should be that he, alone, could assert the unlawful invasion when suit is brought by an injured trespasser. One should not be allowed "to defend an indefensible act" by showing that the party injured was engaged in doing something which, as to a third person, was unlawful.

100 Vt. at 416, 139 A. at 442. *See also Blackwell v. Alabama Power Company,* 275 Ala. 123, 152 So.2d 670 (1963) (injured party was not a trespasser as to power company holding easement); *Earl W. Baker Utilities Co. v. Haney,* 203 Okl. 91, 218 P.2d 621 (1950) (trespasser does not infringe on property right of utility easement holder); *cf. White v. Mississippi Power & Light Co.,* 196 So.2d 343 (Miss.1967).

Though Cooperative claims that these decisions base liability on the inherent dangers associated with high voltage wires and are therefore distinguishable, a closer analysis of the reasoning proves this false. As was noted above, the key criterion these courts used was possessory interest over the land, not the inherent danger created by the utility's use of the land.

■ Even in those states that recognize that a utility easement gives the company possession of land for limited purposes, misuse of that right negates the trespasser defense. For example, in *Texas–Louisiana Power Co. v. Webster,* 127 Tex. 126, 91 S.W.2d 302 (1936), a trespasser was injured by a low-hanging electrical wire. The power company attempted to assert the trespasser defense, but the court refused to allow it.

In the case at bar, as already demonstrated, the power company was not in possession of the land here involved, except for the purposes and with the rights incident to its easement or right of way deed. It had no right under such deed, or under the law, to maintain its wire in the low, sagging condition here shown. In this regard it did not lawfully occupy the space where this wire was hanging, with the consent of the owner. It follows that Doc Webster and Bowen Daniels in walking across this land were not trespassing or transgressing on the property or property rights of the power company.

127 Tex. at 136, 91 S.W.2d at 307. *See also Earl W. Baker Utilities, supra.* Likewise, Cooperative's failure to place a guy marker on a guy wire close to a county road that was not protected by a fence and clearly had pedestrian and vehicular traffic near it negated any right Cooperative had to the trespasser defense because it was not using its possessory space lawfully.

■ Since Cooperative could not avail itself of the trespasser defense, we now turn to what duty it owed Linda. Because of the proximity of the pole and guy wire to a county road and passing traffic, Cooperative was under a duty to exercise reasonable care for the protection of travelers. This principal was succinctly set out in *Athens Electric Light & Power Co. v. Tanner,* 225 S.W. 421 (Tex.Civ.App.1920). There, a horseman was injured by an unmarked guy wire located on private property as he drove his cattle home along a road. The guy wire was within three or four feet of the roadway. In holding that the facts should have gone to a jury on the claim of negligence, the Texas court stated:

Even if the allegations in this case are such that appellee might possibly be said to have alleged the guy wire not to be in the roadway itself, yet, if it were so situated with reference to the roadway and so near as to be adjoining it and if its situation with reference to the known general uses of the road were such that the appellant might have foreseen, by the exercise of reasonable care, that some injury would probably result to persons traveling the road if the wire were not shielded, then appellant would be guilty of negligence. And in any view we can take of the allegations, they were sufficient to allege an act of negligence.

*Id.* at 423.

Similarly, the Louisiana Supreme Court in *Wilson v. Great Southern Telephone & Telegraph Co.,* 41 La.Ann. 1041, 6 So. 781 (1889), required ordinary due care of a utility easement holder whose guy wire was on private property. In *Wilson,* a fireman was injured by a low-hanging guy wire

located on private property near a roadway when he attempted to reach a fire plug. The utility attempted to use the trespasser defense, but the court stated: "The posts were placed in dangerous proximity to the street, and ordinary prudence, and a due regard for the safety of the public, would have dictated that the guy wires should be placed beyond the possibility of injuring any one." 41 La.Ann. at 1042, 6 So. at 782.

■ Here, Cooperative's pole and guy wire were near a county road. Their own guidelines suggested that guy wires be marked if in fields exposed to vehicular traffic and pedestrians. Though Cooperative claims Linda presented no evidence of these facts, the record does not support this allegation. Alfred Novy testified concerning the pole's proximity to his garden and his mowing around the pole three or four times a year. The rough diagram entered into evidence by Linda demonstrates the proximity of the pole and the guy wire to the road and traffic. Clearly, there was an issue of fact as to Cooperative's negligence which was an improper matter for summary judgment. *Stenholtz*, 264 N.W.2d at 517 (questions of negligence for jury if evidence to support issue).

Nor are we dissuaded from this view by the cases cited by Cooperative. The authorities cited by Cooperative are based on the theory that a possessor of land has the same rights as the owner of the land. However, on closer scrutiny, all of these cases are factually distinguishable. In *Roe v. Narragansett Electric Co.*, 53 R.I. 342, 166 A. 695 (1933), a worker was electrocuted when he trespassed through a fence into a transformer area to use the area as a toilet. First, the *Roe* court acknowledged that there is legitimate authority that easement holders do not possess the same rights as the owners of land. Indeed, that authority has become the majority view today. Second, and more importantly, the

utility in *Roe* had the specific right to exclude trespassers from its easement, as was demonstrated by erecting a fenced enclosure around the transformer. No such right of exclusion was provided in Cooperative's easement and, therefore, our facts are more accurately determined by the cases cited earlier on possessory rights given by an easement. The Oregon case of *Kesterson v. California–Oregon Power Co.*, 114 Or. 22, 228 P. 1092 (1924) and the Rhode Island case of *Cook v. Demetrakas*, 108 R.I. 397, 275 A.2d 919 (1971), are both distinguishable on the same grounds.

Moreover, the Kentucky case of *Kentucky Power Co. v. Bayes*, 423 S.W.2d 249 (Ky.Ct.App.1968), rather than support Cooperative's position, detracts from it. In *Bayes*, a trespassing horse was injured by an unmarked guy wire in the *middle* of a fenced field. The court pointed out that the utility stood in the same position as the landowners as regards the horse, but was quick to point out that a different outcome would be dictated if a human being were involved.

Reliance is placed on *Raines v. East Tennessee Telephone Co.*, 150 Ky. 670, 150 S.W. 830, wherein it was held that the defendant would be liable to a member of the traveling public when an exposed guy wire was "placed so near a highway as to endanger persons traveling thereon". In that opinion it was pointed out that "duties arise out of particular circumstances", such as the "peculiar situation of his property and its openness to accident" which would give "reason to apprehend danger".

*Id.* at 250.

■ Finally, Cooperative claims that the definition of "owner" in SDCL 20–9–12,[1] which includes occupant or person in control of premises, stands for the proposition that Cooperative may take the Novys' de-

---

1. SDCL 20–9–12(2) provides in part:
   Terms used in §§ 20–9–12 to 20–9–18, inclusive, mean:

   •  •  •  •  •

   (2) "Owner," the possessor of a fee interest, a tenant, lessee, occupant or person in control

   of the premises[.]

fenses. First, the statute is inapplicable because it deals with the unique case of people injured while entering land for recreational use,[2] which is not present here. Second, as was discussed earlier, Cooperative only occupied the land for a limited purpose, which did not include the power to exclude persons from the land, which the statute is meant to cover.

### DECISION

Therefore, because Cooperative had no right to assume the landowners' defenses and a genuine issue of fact exists as to Cooperative's negligence, we reverse and remand for trial.

SABERS, J., concurs.

WUEST, C.J., and HENDERSON, J., concur specially.

MILLER, J., concurs in result.

WUEST, Chief Justice (concurring specially).

I concur in the majority opinion, but also agree with Justice Miller wherein he cites my special writing in *Hofer v. Meyer*, 295 N.W.2d 333, 337 (S.D.1980). I believe there is a liability question for the jury under either theory.

HENDERSON, Justice (specially concurring).

From digesting cases throughout our Nation, it becomes apparent that an owner or possessor of land is not liable for injury to a trespasser caused by the possessor's failure to exercise reasonable care in having the land in a safe condition. Nonetheless, the prevailing view refuses to extend this immunity to other defendants who are not in possession of the land, i.e., power companies and holders of easements. *See, generally*, Prosser & Keeton, Torts 5th Ed., Sec. 58. This rule may be further examined by reading 30 A.L.R.3d 778, citing 13 jurisdictions in the United States which accept this prevailing view, namely Texas, Alabama,

California, Florida, Louisiana, Mississippi, Missouri, New York, North Carolina, Oklahoma, Pennsylvania, Vermont and Kansas. I agree with the majority opinion that the Cooperative, as a holder of a right-of-way easement, could not legally assert Novy's (landowner's) defense. This Court should not deviate from its previous precedent in 1984, and new personnel on this Court should not destroy precedential vitality. If our previous decisions are absurd or unjust, we owe a duty to change our reason. Need I mention that it is an old established rule to abide by former precedents, when the same point unfolds again in litigation? It is fitting to keep the scales of justice even and steady. It is good to follow case law which has been previously declared and determined, lest the certain become uncertain. Precedent should not be followed if it is bad law or a mechanical policy of adherence, founded upon fallacious reason. In deciding the cases of today, we should harmoniously adjust and fit together the cases we handed down in the past.

In 1989, Circuit Judge Hertz, writing for this Court in *Small v. McKennan Hospital*, 437 N.W.2d 194 (S.D.1989) again set forth distinctions of persons who enter upon land of a land occupier, with an underlying scrutiny of determining the standard of care owed to that person depending upon his status. I am not interested in deviating from two recent majority opinions, to now adopt an abrogation of status distinctions based upon a 1989 Law Review article in South Dakota.

I am fearful of the duty of "ordinary or reasonable care under the circumstances" rule. It is a unitary standard of imposing a duty and would make it far easier for landowners or land occupiers to be held liable. Private ownership of land, in this Nation, is under attack by government agencies which are swallowing up land by the hundreds of thousands of acres. Federal, state and county government further engulf private ownership lands with burden-

---

**2.** SDCL 20–9–13 provides:

Except as provided in § 20–9–16, an owner of land owes no duty of care to keep the land safe for entry or use by others for outdoor recrea-

tional purposes, or to give any warning of a dangerous condition, use, structure, or activity on his land to persons entering for outdoor recreational purposes.

some rules and regulations. As I have observed this increased activity during my lifetime, I think of the pioneers who settled this country and brought civilization to the frontiers, nearly always searching and seeking a piece of land to enjoy and upon which to raise their families. These early settlers longed for a piece of land of their own. Today, private ownership of land is under attack by nearly every vestige of governmental power. To make it easier to sue landowners and occupiers is another step in the wrong direction. Ownership of land would assume greater perils of litigation. Soon, people will fear to own or occupy land. Therefore, I do not wish to see a broad, generic standard of proof to fit nearly every factual scenario.

Lastly, I wish to note that H–D Electric has pleaded contributory negligence of the horse rider then riding, with gusto, after a run away calf, not to mention an assumption of the risk of injury. H–D Electric has also pleaded that the injuries were caused by other forces and beyond the control of H–D Electric, such as animals. H–D Electric has the opportunity to defend themselves in a jury trial and so has not lost this case outright. I have great confidence in the jury system, a system quite unique when one compares it to other jurisprudential systems. The American people are hard to fool when they are given all of the facts.

MILLER, Justice (concurring in result).

Although I agree with the majority's result, I disagree with its rationale.

For all of the reasons set forth in my special writing in *Small v. McKennan Hospital*, 437 N.W.2d 194, 204 (S.D.1989), I continue to urge that we abolish the distinctions of "trespasser," "licensee" and "invitee" as the controlling factor in determining the standard of care owed by a land occupier to an entrant.

I continue to be persuaded by the special writing of Chief Justice Wuest[1] in *Hofer v. Meyer*, 295 N.W.2d 333, 337 (S.D.1980). Additionally, I again quote from the learned and insightful conclusion in Comment, *Premises Liability: A Proposal to Abrogate the Status Distinctions of "Trespasser," "Licensee" and "Invitee" as Determinative of a Land Occupier's Duty of Care Owed to an Entrant*, 33 S.D.L.Rev. 66, 89 (1989), wherein it is stated:

> The common law premises liability classification scheme, which graduates the duty of care owed by a land occupier to an entrant according to the entrant's status of 'trespasser,' 'licensee' or 'invitee,' has outlived its useful purpose. Changes in social mores, humanitarian values and societal living arrangements warrant abrogation in South Dakota of the traditional status distinctions as determinative of the scope of duty of care owed by occupiers to entrants and compel adoption of the more progressive and flexible standard of reasonable care under the circumstances. Were the South Dakota Supreme Court to undo what the common law courts have done poorly, South Dakota would stand to gain much. Land occupiers must be admitted to full membership in the fellowship of those acknowledging adherence to the neighbourly duty of reasonable care.

Further, as Chief Justice Wuest said in *Hofer*, an entrant's status should no longer be controlling. Rather, it is appropriately:

> [O]nly one element among many to be considered in determining the landowner's (or party responsible for the particular condition of the premises) liability under ordinary standards of negligence, with the duty of the landowner (or party responsible for the particular condition of the premises) being no more or no less than that of any other alleged tort-feasor. He must conduct himself as a reasonable man, under the circumstances, on land which he controls as well as in other places. Except in those cases where reasonable minds could not differ, whether he has done so, or not, is always a question for the finder of fact.

295 N.W.2d at 339.

I reiterate, as I did in *Small*, that our cases are outdated and antiquated. Like

---

**1.** At that time he was a circuit judge sitting for a disqualified justice.

other jurisdictions,[2] we need to reexamine these issues in light of more modern times.

---

**2.** As of 1988, "[a]pproximately ten jurisdictions have completely abrogated the distinctions between 'trespassers,' 'licensees,' and 'invitees' as determinative of the scope of the duty of care owed by land occupiers to entrants." *See* Comment, 33 S.D.L.Rev. *supra* at 79. (Research discloses no additional jurisdictions abrogating the distinctions.)

The states and cases abolishing the distinction are listed below. *Webb v. Sitka,* 561 P.2d 731 (Alaska 1977); *Cates v. Beauregard Elec. Cooperative, Inc.,* 328 So.2d 367 (La.1976), *cert denied,* 429 U.S. 833 (1976); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976), *modifying,* 47 A.D.2d 812, 366 N.Y.S.2d 1009 (1975); *Mariorenzi v. Joseph Di Ponte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975); *Smith v. Arbaugh Restaurant,* 152 App.D.C. 86, 469 F.2d 97, *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1972); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971), *affirming,* 28 Colo.App. 400, 474 P.2d 796 (1970);

*Pickard v. Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969); *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), *vacating,* 63 Cal.Rptr. 98 (Cal.App.1967).

The scope of duty of care characterized in these states is the duty of ordinary or reasonable care under the circumstances.

Another group of jurisdictions have abrogated the distinction between "licensees" and "invitees" and have retained the common law category of "trespasser." These states have opted for the unitary standard of imposing a duty of reasonable care on the landowner with respect to persons lawfully on the premises. *See Hudson v. Gaitan,* 675 S.W.2d 699 (Tenn.1984); *Poulin v. Colby College,* 402 A.2d 846 (Me.1979); *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D.1977); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975); *Hardin v. Harris,* 507 S.W.2d 172 (Ky.1974); *Wood v. Camp,* 284 So.2d 691 (Fla.1973); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972).