COURT OF APPEALS OF VIRGINIA

Present:    Judges AtLee, Friedman and Callins
Argued by videoconference

MATTHEW GEORGE POLLOCK

v.      Record No. 0096-25-3

CHRISTY NICOLE POLLOCK

MEMORANDUM OPINION[*] BY
JUDGE FRANK K. FRIEDMAN
MARCH 3, 2026

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

Heather Larson Behrmann (Kyle J. Burcham; Pedersen Law, PLLC,
on brief), for appellant.

J. Thompson Cravens (Cravens & Noll PC, on brief), for appellee.

This case is a divorce matter involving Christy Pollock's (Wife) attempt to file a military retired pay division order (MRPDO) after entry of the final decree of divorce by the Circuit Court of Rockingham County. Matthew Pollock (Husband) contends that Wife's attempts to reconcile the circuit court's final decree with the MRPDO result in the improper indemnification of Wife and a re-writing of the parties' Property Agreement. We agree and reverse the circuit court's amended MRPDO.

BACKGROUND

Wife and Husband were married on June 25, 1994 in Granite Falls, North Carolina. Wife and Husband separated on August 13, 2021; there were no minor children born to the parties. The parties entered into a Property Settlement Agreement on September 7, 2021. Wife filed a complaint for divorce on February 15, 2022.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

Included in the Property Agreement is the division of Husband's military pension.

Paragraph 7 addresses Husband's military pension:

> **Retirement Plans:** Husband has a DFAS Military Retirement Plan. Wife is to receive 50% of the marital share, based on gross pay, of this retirement plan by a Qualified Domestic Relations Order, or its military equivalent, after a final decree of divorce is entered by the Court.
>
> Wife shall retain 100% of her Vanguard IRA.
>
> Nothing contained herein shall be a waiver of either party's right to make any claim for social security benefits based on the other party's social security benefits.

Other portions of the Agreement reference Husband's "gross retirement benefits" and Husband's "gross retirement" in calculating Husband's spousal support to Wife. These provisions were agreed to by the parties and the agreement was drafted by Wife.

The circuit court entered a final decree of divorce on May 25, 2022. The Agreement was affirmed, ratified and incorporated, but not merged into, the final decree. Husband failed to pay wife any portion of the pension or support agreed to in the Property Agreement after they signed the Agreement on September 7, 2021.

After not receiving her agreed-to payments, Wife prepared and attempted to have the Defense Finance and Accounting Service (DFAS) approve a draft MRPDO after entry of the final decree. Wife's proposed MRPDO was rejected by DFAS twice. On April 25, 2024, Wife filed a "Motion to Amend the Final Decree to Effectuate Property Settlement Agreement," and subsequently amended that motion on November 22, 2024. The motions requested that the circuit court amend the final decree to comply with the DFAS requirements, or, in the alternative, to enter an order of withholding.

The court held a hearing on December 5, 2024 to hear argument on Wife's "Amended Motion to Amend Final Decree to Effectuate Property Settlement Agreement." The court decided

the case on the Property Agreement, argument of counsel, and Wife's proposed MRPDO—it took no evidence at the hearing. No changes were made to the final decree by the court, and the court subsequently entered the amended MRPDO on December 17, 2024. The court did determine that the language in the Property Agreement and amended MRPDO were in conflict with one another, noting that the amended MRPDO contains an indemnification clause that was not included in the Property Agreement. The court noted that the purpose of the indemnification clause "is to force [Husband] into making retirement payments to [Wife] regardless of whether DFAS ever approves of a MRPDO."

The court also noted that "[n]o MRPDO had been entered by the Court prior to entry of the Amended MRPDO on December 17, 2024." The court did not make a finding or determine whether the language in the Property Agreement was ambiguous, nor whether the parties entered into the Property Agreement based on either a unilateral or mutual mistake. The court did, however, override the language contained in the Property Agreement when it deemed that language to be in conflict with the amended MRPDO.[1] This appeal follows.

## ANALYSIS

### I. Standard of Review.

"Property settlement agreements are contracts; therefore, we must apply the same rules of interpretation applicable to contracts generally." *Bazzle v. Bazzle*, 37 Va. App. 737, 745 (2002)

---

[1] It appears the circuit court made a clerical error in calling the order "Amended" as there were no prior MRPDOs entered. The circuit court can address this issue on remand. *See* Code § 8.01-428(B). "This code section provides the trial court with the authority only to correct 'clerical mistakes' in its decree or errors in the record so as to cause the acts and proceedings to be set forth correctly." *Zhou v. Zhou*, 38 Va. App. 126, 133 (2002) (citing *Myers v. Commonwealth*, 26 Va. App. 544, 548 (1998)). Furthermore, "[t]he authority to correct a clerical mistake in a decree or the record may be exercised at any time, based on any competent evidence, 'when the justice and truth of the case requires it.'" *Id.* (quoting *Netzer v. Reynolds*, 231 Va. 444, 449 (1986)).

(quoting *Tiffany v. Tiffany*, 1 Va. App. 11, 15 (1985)).  "The interpretation of a contract is a question of law that this court reviews de novo."  *Bolton v. McKinney*, 299 Va. 550, 554 (2021).

II. The Circuit Court Improperly Added an Indemnification Clause in the Amended MRPDO, Modifying the Agreement Without the Husband's Consent

On appeal, Husband argues that Paragraph 11 of the amended MRPDO adds an indemnification clause which was not included in the Property Agreement.  Paragraph 11 states:

> 11.  **Member Payments to [Wife]**: If DFAS does not pay to [Wife] any portion of [Husband]'s benefit that is covered by the MRPDO (e.g., if there are multiple court orders and, combined they exceed the direct payment limits in 10 USC Section 1408(e)), [Husband] shall pay that portion directly to [Wife] within 7 days after the date [Wife] otherwise would have received it.  Such payment(s) to [Wife] shall be net of any income and similar taxes [Husband] incurs with respect to that portion of Plan benefits.[2]

Wife argues that Paragraph 11 does not require indemnification, but that instead the paragraph is "shifting" the method of payment.  Wife further asserts that "Husband is not out any more money by directly paying [her] than if DFAS took the money and directly paid [her]."  We disagree.

Federal law bars a state court from ordering a former spouse to reimburse or indemnify the other former spouse for a reduction in disposable retired pay unless the parties mutually agree to an indemnification provision.  *Howell v. Howell*, 581 U.S. 214, 222 (2017) ("Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus preempted."); *Yourko v. Yourko*, 302 Va. 149, 161 (2023), *cert. denied*, 145 S. Ct. 137 (2024) (finding that *Howell* is not implicated "when parties contractually agree to divide military retirement benefits and include an indemnification provision[,]" but is implicated

---

[2] Also of note, included in Paragraph 9 of the Property Agreement is the following sentence: "Husband agrees to facilitate the direct payment of spousal support through DFAS."

when a court unilaterally "seeks to circumvent the USFSPA [Uniformed Services Former Spouses' Protection Act] by ordering indemnification" for one of the spouses).  The Supreme Court of Virginia, in *Yourko*, held that "with regard to the division of military retirement benefits, 'federal law does not prevent a husband and wife from *entering into an agreement* to provide a set level of payments, the amount of which is determined by considering disability benefits as well as retirement benefits.'"  302 Va. at 162 (emphasis added) (quoting *Owen v. Owen*, 14 Va. App. 623, 628 (1992)).  The distinct facts in *Yourko* led to the Court's result, which overturned the Court of Appeals opinion and held that "federal law does not bar courts from upholding such agreements or from enforcing indemnification provisions *that may be included* to ensure that payments are maintained as intended by the parties."  *Id.* (emphasis added).

In *Yourko*, the parties divided Husband's military pay as part of a property settlement agreement which *did* include an indemnification provision.  *Id.* at 158-59.  The Court, reflecting on the United States Supreme Court precedent in *Mansell v. Mansell*, 490 U.S. 581 (1989), noted that the case "simply proscribes state courts from 'treating military retirement pay that had been waived to receive disability benefits as community property.'"  *Yourko*, 302 Va. at 158-59 (quoting *Mansell*, 490 U.S. at 586).  "*Howell*, on the other hand, only makes clear that state courts cannot order a veteran who elects to waive retirement pay for disability pay to indemnify a former spouse."  *Id.* at 159 (quoting *Howell*, 581 U.S. at 222).  Important to Virginia's Supreme Court in *Yourko* was "that neither *Mansell* nor *Howell* involved a property settlement agreement that contained an indemnification provision."  *Id.* at 158.  Here, the Agreement at issue contains no indemnification provisions either.

Wife argues that Paragraph 9 of the Agreement includes an implied indemnification provision through its language ensuring Husband would facilitate direct payment of spousal

support through DFAS.  Paragraph 9 states that "Husband agrees to facilitate the direct payment of spousal support through DFAS."  Paragraph 9's language, however, is a far cry from the language included in the amended MRPDO, which clearly requires Husband to directly pay Wife any portion not paid by DFAS within seven days.  This indemnification provision unilaterally implemented by the circuit court simply was not agreed to by Husband.[3]  Thus, the order must be reversed with direction to implement an order consistent with the parties' Agreement.

In rejecting the unilateral change, we are not finding that Wife is completely without recourse.  The facts of this case are such that Husband plainly is not meeting the obligations contemplated by the parties when they entered the Property Agreement.  We are simply noting

---

[3] The dissent challenges whether the unilateral indemnification clause is in contravention of *Yourko*, 302 Va. 449, suggesting that *Yourko*'s prohibition on indemnification only applies where there has been a waiver of retirement pay, or a corresponding award of disability pay. This misses the point that this new indemnification term, which Husband never agreed to, is broad enough to cover such events should they occur—and the provision was added without any additional evidence taken on the question of disability pay. *But see* R. 382 (exhibits from prior hearing indicating Husband was receiving significant disability pay).  Even if the dissent were correct that indemnification can be made in this context, and if there were evidence that Husband is not on disability and did not waive retirement benefits (no new evidence was taken), Virginia law still would not permit Wife to rewrite an agreement to add indemnification terms that clearly were not involved in the original Agreement (which she drafted). *See Yourko*, 302 Va. at 162; *see also Tm Delmarva Power v. Ncp of Va.*, 263 Va. 116, 119 (2002) ("Contracts between parties are subject to basic rules of interpretation.  Contracts are construed as written, without adding terms that were not included by the parties." (citing *Wilson v. Holyfield*, 227 Va. 184, 187 (1984))).  The dissent also argues that allowing an indemnification provision would effectuate the original Agreement.  This cannot, however, be true because Husband explicitly agreed to an Agreement without an indemnification provision.  Instead, allowing the circuit court to circumvent the Property Agreement and unilaterally impose an indemnification provision would have the opposite effect and effectuate a provision which did not exist at the time the original Property Agreement went into effect.  What the circuit court did in this case essentially *invalidated* the original Agreement by adding its own terms, which is explicitly prohibited under Virginia law. *Tm Delmarva Power*, 263 Va. at 119; *see also Jones v. Harrison*, 250 Va. 64, 68 (1995) (noting that courts "do not rewrite contracts to insert provisions that have been omitted by the parties[]" (citing *Westbury Coal Mining P'ship v. J. S. & K. Coal Corp.*, 233 Va. 226, 229 (1987))).

that the circuit court's attempts at equity through imposing a unilateral indemnification provision never agreed to by Husband were made in error.[4]

III. The Circuit Court Further Erred by Improperly Modifying and Substituting the Term "Gross Pay" with the Term "Disposable Retired Pay" in the Amended MRPDO

Husband also argues on appeal that Paragraph 3 of the amended MRPDO modifies and substitutes the term "gross pay" with the term "disposable retired pay." Paragraph 3 of the amended MRPDO states:

> 3. **Benefit Assignment:** This Order assigns to [Wife] the following portion of [Husband's] "**Disposable Retired Pay**," as defined in 10 USC Section 1408(a)(4):
>
> A. **Amount:** This Order assigns to [Wife] 50% of the Marital Share of [Husband's] Disposable Retired Pay; It shall increase with the cost of living (COLA) adjustments for [Husband]. Based upon final retired pay of [Husband] including raises and good increases. Wife shall receive 50% of the marital share which shall be determined by a faction [sic] made upon 325 months of marital pension service divided by the total months of [H]usband's military service, 332. Example: []50% X (325 months of marital pension service/332 Husband's total military service).
>
> B. **High-3/Creditable Service:** For purposes of calculating [Wife's] benefit assignment the parties' divorce occurred on May 25, 2022, when [Husband's] military retirement pay base (high-3) was $7,993.00 per month and the member had 332-months of creditable military service.

---

[4] In reaching this conclusion, we note that Wife pointedly argues that Husband's stubborn rejection of all offered changes has the effect of blocking payments of military benefits by DFAS to Wife. For the moment, Wife has not sought to establish that the original agreement contains mutual mistakes which have resulted in non-payment; nor has she argued that there is a change in conditions since the original agreement was entered, or that Husband's tactics demonstrate that certain clauses are "impossible" to accomplish or inoperable, thereby triggering the original agreement's severability clause. She has not argued that Husband has breached the Property Agreement by acting to prevent DFAS payments. Instead, to date, she has argued that the agreement should be altered unilaterally by inserting Wife's indemnification language into the deal for the sake of fairness, without Husband's consent and despite the existence of different terms in the original agreement. While we sympathize with Wife's situation, she still requires a legal predicate for the relief she seeks.

Under the USFSPA, "disposable retired pay" is defined as all retired pay to which a service member is entitled, subject to a series of exceptions. 10 U.S.C. § 1408(a)(4)(A). The Supreme Court of the United States, in *Mansell*, addressed the definition of "disposable retired pay" under the USFSPA and the mechanism by which a spouse may get direct payments from the federal government. 490 U.S. at 589. The Court noted that "[t]he Act also creates a payments mechanism under which the Federal Government will make direct payments to a former spouse who presents, to the Secretary of the relevant military service, a state-court order granting her a portion of the military retiree's disposable retired or retainer pay." *Id.* The direct payments are limited in two ways. The first is that "only a former spouse who was married to a military member 'for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay' . . . is eligible to receive direct community property payments." *Id.* (quoting 10 U.S.C. § 1408(d)(2)). The second limitation is that "the Federal Government will not make community property payments that exceed 50 percent of disposable retired or retainer pay." *Id.* (quoting 10 U.S.C. § 1408(e)(1)).

Here, the parties used the term "gross pay" throughout their entire Property Agreement. The court unilaterally modified that term by replacing it with "disposable retired pay" in Paragraph 3 of the MRPDO. Thus, looking to the plain language used in the Agreement, the parties agreed that Wife's award of Husband's military retirement would be determined on his "gross pay." *See Schuiling v. Harris*, 286 Va. 187, 192 (1986) (finding that where there is no ambiguity in the terms of the contract, the circuit court must construe the contract as written). Thus, the circuit court's modification of "gross pay" to "'Disposable Retired Pay' as defined in 10 USC Section 1408(a)(4)" changes the meaning and effect of the parties' Agreement, transforming the subject payment from the total amount, exclusive of any deductions, to a post-deduction net amount. Again, this

significant change to the Agreement was made without Husband's consent.[5] The circuit court therefore erred in this change as well, and the amended MRPDO should be vacated, the circuit court's decision reversed and remanded.

Again, this does not mean that the circuit court is powerless in future proceedings to craft relief—upon a proper theory—to address the fact that Husband has failed, over a period of several years, to make payments the parties clearly contemplated under the original Agreement. *See supra* note 4.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed and remanded for a decision consistent with this opinion.

*Reversed and Remanded.*

---

[5] We note that although Husband challenges the unilateral alteration of the agreement, the substitution of "disposable retired pay" for "gross pay" would likely *benefit* Husband because "disposable retired pay" is defined as "gross pay" minus exclusions. Thus, Husband would be responsible for paying less money than if the change had not been made by the amended MRPDO. Again, Wife suggests Husband refuses even changes favorable to him—because, under the status quo, DFAS is not making payments. In future proceedings, if the parties do not reach an orderly settlement, Wife is free to contend that Husband has failed to "facilitate the direct payment of spousal support through DFAS" and, thereby, breached the agreement's terms.

Callins, J., dissenting.

I agree with my colleagues that the military retired pay division order (MRPDO) contains an indemnification clause not found in the Property Settlement Agreement (PSA). But I would place more emphasis on the nuances of the rule announced in *Mansell v. Mansell*, 490 U.S. 581 (1989), perfected in *Howell v. Howell*, 581 U.S. 214 (2017), and recognized in *Yourko v. Yourko*, 302 Va. 149 (2023), *cert. denied*, 145 S. Ct. 137 (2024): that "federal law completely preempts the States from treating *waived* military retirement pay as divisible community property." *Howell*, 581 U.S. at 220 (emphasis added) (discussing *Mansell*); *see Yourko*, 302 Va. at 160-62. Because I would hold that, as a matter of effectuating the intent of the Pollocks' PSA, the MRPDO did not impose an indemnification provision barred by these precedents, I dissent.

Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA) as a response to prior precedent barring the equitable distribution of military retired pay. *See McCarty v. McCarty*, 453 U.S. 210 (1981), *superseded by statute in part*, USFSPA, Pub. L. No. 97-252, 96 Stat. 730 (1982), *as recognized in Howell*, 581 U.S. at 217. The USFSPA authorizes state courts to "treat disposable retired pay payable to a member . . . either as property solely of the member or as property of the member and his spouse" as determined under state law.[6] 10 U.S.C. § 1408(c)(1). "Disposable retired pay" refers to the gross monthly retirement pay to which a servicemember is entitled, less amounts (i) owed by the servicemember to the United States for overpayments or recoupments, (ii) deducted due to forfeitures ordered by court-martial or waivers to receive compensation, including disability pay, (iii) which are protected entitlements related to the servicemembers disability status, and (iv) deducted to provide an annuity to a spouse or former spouse. *Id.* § 1408(a)(4)(A). As the majority notes, former

---

[6] Under Virginia law, retirement pay is considered marital property if it is "acquired by either spouse during the marriage, and before the last separation of the parties." Code § 20-107.3(A)(2).

spouses of servicemembers married to the servicemember for ten years of the servicemember's service are entitled to receive direct payments from the Defense Finance Accounting Service (DFAS) of amounts distributed under state court divorce decrees. *Id.* § 1408(d)(1), (2). But DFAS may not pay more than 50% of a servicemember's disposable retirement pay to a former spouse. *Id.* § 1408(e)(1).

Although the USFSPA narrowed the scope of federal restrictions on the equitable distribution of military retired pay, Congress continues to preempt the distribution of pay waived for the receipt of disability pay. *Mansell*, 490 U.S. at 594-95. In *Mansell*, a husband and wife entered into a PSA providing that husband would pay wife 50% of his total military retirement pay, including portions waived so he could receive disability benefits. *Id.* at 586. When the husband moved to modify the divorce decree to dissolve the PSA's requirement that his total retirement pay be shared with wife, lower courts declined to do so. *Id.* at 586-87. They reasoned that the USFSPA comprehensively lifted federal preemption on the division of military retirement pay. *Id.* The Supreme Court of the United States reversed the lower courts, holding that under the USFSPA "state courts have been granted the authority to treat disposable retired pay as [marital] property; they have not been granted the authority to treat *total* retired pay as [marital] property." *Id.* at 589 (emphasis added). By excluding amounts waived to receive disability pay from its definition of "disposable retired pay," the USFSPA preempts state courts from the equitable distribution of retired pay "waived to receive veterans' disability benefits." *Id.* at 589, 595.

The Court more recently expanded the *Mansell* rule, holding that state courts may not order a servicemember to indemnify a former spouse for portions of their gross retirement pay waived to receive disability benefits long after divorce. *Howell*, 581 U.S. at 216. In *Howell*, a husband and wife divorced while husband was still in active service, and wife was awarded 50%

of husband's military retirement pay. *Id.* at 218-19. Thirteen years after their divorce, husband opted to waive a portion of his retirement pay, decreasing the total amount received by wife. *Id.* at 219. Arizona courts held that, under the terms of the original decree, wife was entitled to her full 50% interest without regard to husband's disability waiver and ordered husband to indemnify wife for her lost interest. *Id.* at 219-20. The Court reversed the Arizona courts, holding they lacked the power to order indemnification. *Id.* at 221. The Court reasoned that the reduction in wife's portion of husband's retirement pay was a future contingency that always existed, meaning that "the value of [wife's] share of military retirement pay was possibly worth less . . . at the time of the divorce" than wife may have thought. *Id.* Yet the Court limited its holding solely to the question of whether state courts could order indemnification as a matter of interpreting their prior orders. *Id.* at 223.

Among others, *Howell* left open the question of whether parties to a divorce may agree to indemnification provisions in a PSA. Our Supreme Court addressed this question in *Yourko v. Yourko*, 302 Va. 149 (2023), *cert. denied*, 145 S. Ct. 137 (2024). There, a husband and wife entered into a PSA entitling wife to 30%, or $1,202.70 monthly, of husband's disposable military retirement pay, and the parties' agreement was memorialized in an MRPDO. *Yourko*, 302 Va. at 153-54. The PSA and MRPDO provided that if husband took any action reducing wife's entitlement, husband was required to indemnify wife by paying her directly for any amount lost. *Id.* at 154. DFAS later determined that a greater portion than anticipated of husband's retirement pay was deemed disability pay, reducing wife's share to only $253.20 monthly. *Id.* Our Supreme Court held that *Howell* did not prevent parties from voluntarily contracting to indemnify former spouses in the event military retirement pay is reduced. *Id.* at 156. To the contrary, the Court held that the USFSPA does not "bar courts from upholding [PSAs] or from

- 12 -

enforcing indemnification provisions that may be included to ensure that payments are maintained as intended by the parties." *Id.* at 162.

Because the prohibition announced in *Howell* "is *only* implicated when a [court] seeks to *circumvent the USFSPA* by ordering indemnification," I would conclude that *Mansell*, *Howell*, and *Yourko* are inapposite to this case. *Yourko*, 302 Va. at 161 (emphases added). Here, the trial court did not compel Husband to distribute his total retired pay in contravention of the USFSPA, as in *Mansell*. Neither did it order indemnification as a back door to distributing portions of Husband's retired pay waived to receive disability benefits, as in *Howell*. Nor did the parties agree to indemnify Wife for waived pay, as in *Yourko*. Indeed, the indemnification clause in the MRPDO in no way acts to "circumvent the USFSPA." *Yourko*, 302 Va. at 161. Nor could it. The parties agreed to distribute Husband's military retired pay "based on gross pay." The record includes no indication that Husband (i) is indebted to the United States for overpayments or recoupments, (ii) is subject to a court-martial-ordered forfeiture or has waived retired pay to receive disability benefits, (iii) has been declared disabled, or (iv) has elected to provide an annuity to a spouse or former spouse. 10 U.S.C. § 1408(a)(4)(A). Absent evidence that the trial court ordered indemnification to account for retired pay reduced under the USFSPA for these purposes, its indemnification provision is not barred by the USFSPA. In other words, the trial court imposed the indemnification clause as a means of enforcing the terms of the PSA and not in an effort to circumvent the USFSPA.[7] And, for that matter, its use of the term "disposable

---

[7] Notably, this is consistent with the interpretations of *Howell* employed in some of our sister jurisdictions. *See, e.g.*, *Gross v. Wilson*, 424 P.3d 390, 401 (Alaska 2018) ("Under *Howell* a state court may not circumvent *Mansell* by ordering a service member to 'indemnify' a former spouse for retirement benefits waived to receive disability pay. But *Howell* does not hold that a state court cannot enforce a property division by ordering a service member who unilaterally stops making payments the service member was legally obligated to make to resume those payments and pay arrearages."); *Martin v. Martin*, 520 P.3d 813, 818 (Nev. 2022) (recognizing that *Howell* and *Mansell* stand for the proposition that "state courts lack the authority to treat disability pay as community property and to divide it in a divorce disposition").

- 13 -

retired pay" is innocuous, since Husband's disposable retired pay would be his gross retired pay absent these deductions.

Amusingly, my colleagues claim that I have "misse[d] the point," *supra* note 3, insofar as they read the trial court's indemnification clause as "broad enough" to encompass the circumstances barred by *Mansell*, *Howell*, and *Yourko*. To the contrary, I contend it is my colleagues who miss the point, considering issues not actually before the Court. Even conceding that this indemnification clause could encompass retired pay protected under the USFSPA, Husband made no argument below that any of the carve outs from disposable retired pay apply to him. Absent arguments to this effect and facts to support these arguments, the issues raised by the majority are not ripe for review.[8]

Were that not enough, I would otherwise interpret the PSA to effectuate the Pollocks' intent. In construing the PSA, we must give effect to the Pollocks' intention as expressed "by them in the words they have used," and we are "bound to say that the parties intended what the written instrument plainly declares." *Allen v. Allen*, 66 Va. App. 586, 596 (2016) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)). We also presume the trial court made all necessary factual findings and reached all requisite conclusions of law in entering the amended MRPDO. *Highlander v. Va. Dep't of Wildlife Res.*, 84 Va. App. 404, 421 (2025) (highlighting presumption the trial court complied with governing legal principles); *Ingram v. Commonwealth*, 74 Va. App.

---

[8] As stated by our Supreme Court:

> Whereas mootness addresses a once viable claim that has lost its viability, the concept of ripeness applies to claims that, while potentially viable at some point in the future, have yet to mature into a justiciable controversy—that is, an actual controversy between the parties that is not based solely on speculation or purely hypothetical scenarios that may (or may not) occur at some undefined point in the future.

*Berry v. Bd. of Supervisors*, 302 Va. 114, 131 (2023).

59, 69 (2021) (noting that we presume trial courts make all necessary factual findings in absence of specific ones). By its plain terms, the PSA entitles Wife to (1) "50% of the marital share, *based on gross pay*, of" Husband's military retired pay, and (2) "12% of Husband's gross retirement benefits per month for 200 months," decreasing to 5% thereafter. (Emphasis added). Husband agreed, by the PSA, to facilitate the payment of these portions of his military retirement pay by "Qualified Domestic Relations Order" and by "direct payment . . . through DFAS." The Pollocks' intent is clear: they intended the equitable distribution of Husband's military retired pay, granting half to Wife as a retirement asset, and granting a smaller percentage to her as spousal support. We can only give effect to these provisions, therefore, if we interpret them as speaking in terms of disposable retired pay—by law, the maximum amount subject to equitable distribution by the court—and as providing for direct payment of spousal support. Presuming the trial court did the same, I would conclude the trial court did not err in entering the amended MRPDO to effectuate the Pollocks' clearly expressed intentions.[9]

As a result, I respectfully dissent. I would affirm the trial court's judgment and, because I would conclude Wife is the prevailing party on appeal, I would award her attorney fees, the amount of which to be determined upon remand.

---

[9] That is not to say, however, that the parties may not still encounter resistance from DFAS in accepting an MRPDO that includes an indemnification clause to the extent it does not comply with order terms DFAS will accept. I would hold only that the trial court is not precluded by *Mansell* and *Howell* from imposing such a requirement under the circumstances presented here.